## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE ZEROED-IN TECHNOLOGIES, LLC DATA BREACH LITIGATION | Case No. 1:23-cv-03284-BAH<br><br>Judge Brendan Abell Hurson<br><br>**DEFENDNAT ZEROED-IN TECHNOLOGIES, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |

Defendant Zeroed-In Technologies, LLC ("Zeroed-In") hereby answers the Consolidated Class Action Complaint ("Complaint") filed by Plaintiffs Hollynn Adkisson, Yolanda Alvarado, Fareeka Barnett, Melody T. Brantley, Danielle Cooke, Felizitas Cox, Melissa DeShon, Cedric Eady, Dylan Garcia, Solimar Garcia, Dominick Garland, Paula Hasenei, Christopher Ingram, Ashley Jacobson, Barry Jeffries, Lacy Matczak, Lashawn McDaniel, Edward McNanna, Brittany Mintz, Christian Moss, Rosie Player, Alyssa Rivera, Cynthia Rivera, Brandy Sinnett, and Jack Meyers ("*Plaintiffs*"), demands a jury trial, and asserts the following affirmative defenses, as follows:

## SUMMARY OF THE CASE

1.     This class action arises out of the recent targeted cyberattack and data breach wherein third-party criminals retrieved and exfiltrated highly-sensitive consumer data belonging to Plaintiffs and nearly 2,000,000 Class Members (the "Data Breach")[1] via a security vulnerability in Zeroed-In's information technology systems, which allowed hackers and other bad actors to obtain

---

[1] *Data Breach Notifications – Zeroed-In*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236.shtml (last visited April 12, 2024).

Plaintiffs' and Class Members' personally identifiable information—including names, dates of birth, and Social Security numbers ("PII"[2] or "Private Information").

> **ANSWER:** **Zeroed-In admits that in 2023 it was the victim of a ransom event in which third-party cyber criminals gained unauthorized access to certain systems of Zeroed-In and claimed to have accessed certain files, some of which contained certain information of Family Dollar, LLC employees. Zeroed-In denies the remaining allegations contained in paragraph 1 of the Complaint.**

2.      Defendant Zeroed-In is a data and technology consulting firm that provides workforce analytical services and data management software to thousands of registered users and more than 70 institutional clients—including Defendant Dollar Tree.[3]

> **ANSWER:** **Zeroed-In admits that it is a small data and technology firm that provides workforce analytical services to its customers, including Dollar Tree, Inc. and Family Dollar, LLC (collectively "Dollar Tree"). Zeroed-In denies the remaining allegations contained in paragraph 2 of the Complaint.**

3.      Victims of the Data Breach include customers and current and former employees of Dollar Tree who utilized the services of Zeroed-In.

> **ANSWER:** **Denied.**

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class, many of whom are

---

[2] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual but are considered to be particularly sensitive and/or valuable in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

[3] [3] *About*, ZEROED-IN, https://www.zeroedin.com/about-zeroedin/ (last visited April 12, 2024).

citizens of states different from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

> **ANSWER:** **Paragraph 4 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In admits Plaintiffs are seeking damages in excess of $5 million but denies that the action has any merit, denies the factual and/or legal accuracy of Plaintiffs' allegations in bringing this action, denies that Plaintiffs are entitled to any relief whatsoever, and denies the remaining allegations in paragraph 4 of the Complaint.**

5.    Defendant Zeroed-In is a citizen of Maryland because its principal place of business is located in Linthicum, Maryland and one or more of its members reside in Maryland. Thus, the U.S. District Court for the District of Maryland has general personal jurisdiction over Zeroed-In.

> **ANSWER:** **Paragraph 5 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In admits it is located in Linthicum, Maryland and that this Court has jurisdiction over this lawsuit, as pled, at this time, but denies the factual and/or legal accuracy of Plaintiffs' allegations in bringing this action, denies that Plaintiffs are entitled to any relief whatsoever, and denies the remaining allegations in paragraph 5 of the Complaint.**

6.    This Court has specific personal jurisdiction over Defendants Dollar Tree, Inc. and Family Dollar, LLC because they shared Plaintiffs' and Class Members' PII with Zeroed-In in Maryland and this District.

> **ANSWER:** **Paragraph 6 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In admits it is located in Maryland and in this District but denies the remaining allegations in paragraph 6 of the Complaint.**

7.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Zeroed-In operates in this District, Dollar Tree, Inc. and Family Dollar, LLC provided and entrusted Plaintiffs' and Class Members' PII to Zeroed-In in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**ANSWER:** **Paragraph 7 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In admits it operates in this District and that venue is proper in this District but denies the factual and/or legal accuracy of Plaintiffs' allegations in bringing this action, denies that Plaintiffs are entitled to any relief whatsoever, and denies the remaining allegations in paragraph 7 of the Complaint.**

## PARTIES

*A.* **PLAINTIFFS**

### *Plaintiff Hollynn Adkisson*

8.    Plaintiff Hollynn Adkisson is an adult individual and a natural person of Missouri, residing in Johnson County, where she intends to stay.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of the Complaint, and accordingly, those allegations are hereby denied.**

9.    Plaintiff Adkisson, a former employee of Dollar Tree provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Adkisson's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 9 of the Complaint, and accordingly, those allegations are hereby denied.**

10.    Plaintiff Adkisson received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued.**

**Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 10 of the Complaint, and accordingly, those allegations are hereby denied.**

11.    The notice letter informed Plaintiff Adkisson that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:    Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 11 of the Complaint.**

### *Plaintiff Yolanda Alvarado*

12.    Plaintiff Yolanda Alvarado is an adult individual and a natural person of California, residing in Lassen County, where she intends to stay.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 12 of the Complaint, and accordingly, those allegations are hereby denied.**

13.    Plaintiff Alvarado, a former employee of Family Dollar, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Alvarado's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 13 of the Complaint, and accordingly, those allegations are hereby denied.**

14.    Plaintiff Alvarado received a notice letter from Defendant Zeroed-In, dated November 23, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 14 of the Complaint, and accordingly, those allegations are hereby denied.**

15.    The notice letter informed Plaintiff Alvarado that her name, date of birth, and Social Security number were compromised in the Data Breach.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 15 of the Complaint.**

### *Plaintiff Fareeka Barnett*

16.    Plaintiff Fareeka Barnett is an adult individual and a natural person of Maryland, residing in Anne Arundel County, where she intends to stay.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 16 of the Complaint, and accordingly, those allegations are hereby denied.**

17.    Plaintiff Barnett, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Barnett's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 17 of the Complaint, and accordingly, those allegations are hereby denied.**

18.    Plaintiff Barnett received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 18 of the Complaint, and accordingly, those allegations are hereby denied.**

19.    The notice letter informed Plaintiff Barnett that her name, date of birth, and Social Security number were compromised in the Data Breach.

> **ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 19 of the Complaint.**

### *Plaintiff Melody T. Brantley*

20.    Plaintiff Melody T. Brantley is an adult individual and a natural person of Texas, residing in Harrison County, where she intends to stay.

> **ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 20 of the Complaint, and accordingly, those allegations are hereby denied.**

21.     Plaintiff Brantley, a former employee of Family Dollar, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Melody T. Brantley's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:**     **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 21 of the Complaint, and accordingly, those allegations are hereby denied.**

22.     Plaintiff Brantley received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:**     **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 22 of the Complaint, and accordingly, those allegations are hereby denied.**

23.     The notice letter informed Plaintiff Brantley that her name, date of birth, and Social Security number were compromised in the Data Breach.

> **ANSWER:**     **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 23 of the Complaint.**

### *Plaintiff Danielle Cooke*

24.     Plaintiff Danielle Cooke is an adult individual and a natural person of Virginia, residing in Hampton, where she intends to stay.

**<u>ANSWER</u>:**     **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 24 of the Complaint, and accordingly, those allegations are hereby denied.**

25.     Plaintiff Cooke, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Cooke's Private Information was stored and maintained by Defendant Zeroed-In.

**<u>ANSWER</u>:**     **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 25 of the Complaint, and accordingly, those allegations are hereby denied.**

26.     Plaintiff Cooke received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

**<u>ANSWER</u>:**     **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 26 of the Complaint, and accordingly, those allegations are hereby denied.**

27.     The notice letter informed Plaintiff Cooke that her name, date of birth, and Social Security number were compromised in the Data Breach.

**<u>ANSWER</u>:**     **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 27 of the Complaint.**

**<u>*Plaintiff Felizitas Cox*</u>**

28.     Plaintiff Felizitas Cox is an adult individual and a natural person of California, residing in San Joaquin County, where she intends to stay.

> **ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 28 of the Complaint, and accordingly, those allegations are hereby denied.**

29.     Plaintiff Cox, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Felizitas Cox's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 29 of the Complaint, and accordingly, those allegations are hereby denied.**

30.     Plaintiff Cox received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:     Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 30 of the Complaint, and accordingly, those allegations are hereby denied.**

31.     The notice letter informed Plaintiff Cox that her name, Social Security number, and date of birth were compromised in the Data Breach.

> **ANSWER:     Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your**

name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 31 of the Complaint.

### *Plaintiff Melissa Deshon*

32.    Plaintiff Melissa DeShon is an adult individual and a natural person of Mississippi, residing in Rankin County, where she intends to stay.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 32 of the Complaint, and accordingly, those allegations are hereby denied.**

33.    Plaintiff DeShon, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff DeShon's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 33 of the Complaint, and accordingly, those allegations are hereby denied.**

34.    Plaintiff DeShon received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 34 of the Complaint, and accordingly, those allegations are hereby denied.**

35.    The notice letter informed Plaintiff DeShon that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 35 of the Complaint.**

### *Plaintiff Cedric Eady*

36.    Plaintiff Cedric Eady is an adult individual and a natural person of Florida, residing in Hillsborough County, where he intends to stay.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 36 of the Complaint, and accordingly, those allegations are hereby denied.**

37.    Plaintiff Eady, a former employee of Dollar Tree, provided his PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Eady's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 37 of the Complaint, and accordingly, those allegations are hereby denied.**

38.    Plaintiff Eady received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing him of the Data Breach and the unauthorized exposure of his Private Information.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued.**

12

**Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 38 of the Complaint, and accordingly, those allegations are hereby denied.**

39. The notice letter informed Plaintiff Eady that his name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 39 of the Complaint.**

### *Plaintiff Dylan Garcia*

40. Plaintiff Dylan Garcia is an adult individual and a natural person of California, residing in San Luis Obispo County, where he intends to stay.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 40 of the Complaint, and accordingly, those allegations are hereby denied.**

41. Plaintiff Dylan Garcia, a former employee of Dollar Tree, provided his PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Dylan Garcia's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 41 of the Complaint, and accordingly, those allegations are hereby denied.**

42.    Plaintiff Dylan Garcia received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing him of the Data Breach and the unauthorized exposure of his Private Information.

**ANSWER:    Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 42 of the Complaint, and accordingly, those allegations are hereby denied.**

43.    The notice letter informed Plaintiff Dylan Garcia that his name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:    Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 43 of the Complaint.**

### *Plaintiff Solimar Garcia*

44.    Plaintiff Solimar Garcia is an adult individual and a natural person of Virginia, residing in Fairfax County, where she intends to stay.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 44 of the Complaint, and accordingly, those allegations are hereby denied.**

45.    Plaintiff Solimar Garcia, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Solimar Garcia's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 45 of the Complaint, and accordingly, those allegations are hereby denied.**

46.    Plaintiff Solimar Garcia received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 46 of the Complaint, and accordingly, those allegations are hereby denied.**

47.    The notice letter informed Plaintiff Solimar Garcia that her name, date of birth, and Social Security number were compromised in the Data Breach.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 47 of the Complaint.**

### *Plaintiff Dominick Garland*

48.    Plaintiff Dominick Garland is an adult individual and a natural person of Maryland, residing in Baltimore County, where he intends to stay.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 48 of the Complaint, and accordingly, those allegations are hereby denied.**

49.     Plaintiff Garland, a former employee of Dollar Tree, provided his PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Garland's Private Information was stored and maintained by Defendant Zeroed-In.

>   **ANSWER:**     **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 49 of the Complaint, and accordingly, those allegations are hereby denied.**

50.     Plaintiff Garland received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing him of the Data Breach and the unauthorized exposure of his Private Information.

>   **ANSWER:**     **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 50 of the Complaint, and accordingly, those allegations are hereby denied.**

51.     The notice letter informed Plaintiff Garland that his name, date of birth and social security number were compromised in the Data Breach.

>   **ANSWER:**     **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 51 of the Complaint.**

### *Plaintiff Paula Hasenei*

52.     Plaintiff Paula Hasenei is an adult individual and a natural person of Georgia, residing in DeKalb County, where she intends to stay.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 52 of the Complaint, and accordingly, those allegations are hereby denied.**

53. Plaintiff Hasenei, an employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Hasenei's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 53 of the Complaint, and accordingly, those allegations are hereby denied.**

54. Plaintiff Hasenei received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her PII.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 54 of the Complaint, and accordingly, those allegations are hereby denied.**

55. The notice letter informed Plaintiff Hasenei that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 55 of the Complaint.**

### *Plaintiff Christopher Ingram*

56.    Plaintiff Christopher Ingram is an adult individual and citizen of South Carolina, residing in Aiken County, where he intends to stay.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 56 of the Complaint, and accordingly, those allegations are hereby denied.**

57.    Plaintiff Ingram, a former employee of Dollar Tree, provided his PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Ingram's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 57 of the Complaint, and accordingly, those allegations are hereby denied.**

58.    Plaintiff Ingram received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing him of the Data Breach and the unauthorized exposure of his Private Information.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 58 of the Complaint, and accordingly, those allegations are hereby denied.**

59.    The notice letter informed Plaintiff Ingram that his name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your**

name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 59 of the Complaint.

### *Plaintiff Ashley Jacobson*

60. Plaintiff Ashley Jacobson is an adult individual and a natural person of Minnesota, residing in Pine City, where she intends to stay.

> **ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 60 of the Complaint, and accordingly, those allegations are hereby denied.**

61. Plaintiff Jacobson, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Jacobson's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 61 of the Complaint, and accordingly, those allegations are hereby denied.**

62. Plaintiff Jacobson received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 62 of the Complaint, and accordingly, those allegations are hereby denied.**

63. The notice letter informed Plaintiff Jacobson that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:**  **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 63 of the Complaint.**

### *Plaintiff Barry Jeffries*

64.    Plaintiff Barry Jeffries is an adult individual and a natural person of Tennessee, residing in Shelby County, where he intends to stay.

**ANSWER:**  **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 64 of the Complaint, and accordingly, those allegations are hereby denied.**

65.    Plaintiff Jeffries, a former employee of Family Dollar, provided his PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Jeffries's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:**  **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 65 of the Complaint, and accordingly, those allegations are hereby denied.**

66.    Plaintiff Jeffries received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing him of the Data Breach and the unauthorized exposure of his Private Information.

**ANSWER:**  **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 66 of the Complaint, and accordingly, those allegations are hereby denied.**

67.    The notice letter informed Plaintiff Jeffries that his name, date of birth, and Social

Security number were compromised in the Data Breach.

**ANSWER:    Zeroed-In admits its legal counsel provided written notification of the ransom event stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 19 of the Complaint.**

### *Plaintiff Lacy Matczak*

68.    Plaintiff Lacy Matczak is an adult individual and a natural person of Delaware,

residing in New Castle County, where she intends to stay.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 68 of the Complaint, and accordingly, those allegations are hereby denied.**

69.    Plaintiff Matczak, a former employee of Dollar Tree, provided her PII to Dollar

Tree as a condition of employment. Upon information and belief, Plaintiff Matczak's Private

Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 69 of the Complaint, and accordingly, those allegations are hereby denied.**

70.    Plaintiff Matczak received a notice letter from Defendant Zeroed-In, dated

November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her

Private Information.

**ANSWER:    Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or**

21

> falsity of the remaining allegations contained in paragraph 70 of the
> Complaint, and accordingly, those allegations are hereby denied.

71.    The notice letter informed Plaintiff Matczak that her name, date of birth, and Social

Security number were compromised in the Data Breach.

> **ANSWER:    Zeroed-In admits its legal counsel provided written notification of the
> ransom event that stated "information was present on the systems
> involved at the time of the incident and the information includes your
> name, date of birth, and Social Security number," and that notice was
> appropriate and promptly issued. Zeroed-In denies the remaining
> allegations contained in paragraph 71 of the Complaint.**

### *Plaintiff Lashawn McDaniel*

72.    Plaintiff Lashawn McDaniel is an adult individual and a natural person of Missouri,

residing in St. Louis County, where he intends to stay.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a
> belief as to the truth or falsity of the allegations contained in paragraph
> 72 of the Complaint, and accordingly, those allegations are hereby
> denied.**

73.    Plaintiff McDaniel, a current employee of Family Dollar, provided his PII to Dollar

Tree as a condition of employment. Upon information and belief, Plaintiff McDaniel's Private

Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a
> belief as to the truth or falsity of the allegations contained in paragraph
> 73 of the Complaint, and accordingly, those allegations are hereby
> denied.**

74.    Plaintiff McDaniel received a notice letter from Defendant Zeroed-In, dated

November 27, 2023, informing him of the Data Breach and the unauthorized exposure of his

Private Information.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 74 of the Complaint, and accordingly, those allegations are hereby denied.**

75. The notice letter informed Plaintiff McDaniel that his name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 75 of the Complaint.**

### *Plaintiff Edward McNanna*

76. Plaintiff Edward McNanna is an adult individual and a natural person of Illinois, residing in Rock Island County, where he intends to stay.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 76 of the Complaint, and accordingly, those allegations are hereby denied.**

77. Plaintiff McNanna, a former employee of Dollar Tree, provided his PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff McNanna's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 77 of the Complaint, and accordingly, those allegations are hereby denied.**

78.     Plaintiff McNanna received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing him of the Data Breach and the unauthorized exposure of his Private Information.

**ANSWER:     Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 78 of the Complaint, and accordingly, those allegations are hereby denied.**

79.     The notice letter informed Plaintiff McNanna that his name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:     Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 79 of the Complaint.**

### *Plaintiff Jack Meyers*

80.     Plaintiff Jack Meyers is an adult individual and a natural person of California, residing in Sacramento County, where he intends to stay.

**ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 80 of the Complaint, and accordingly, those allegations are hereby denied.**

81.     Plaintiff Meyers, a former employee of Dollar Tree, provided his PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Meyer's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 81 of the Complaint, and accordingly, those allegations are hereby denied.**

82.    Plaintiff Meyers received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing him of the Data breach and the unauthorized exposure of his Private Information.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 82 of the Complaint, and accordingly, those allegations are hereby denied.**

83.    The notice latter information Plaintiff Meyers that his name, date of birth, and Social Security number were compromised in the Data Breach.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 83 of the Complaint.**

84.    On or about December 12, 2023, pursuant to § 1798.150(b) of the CCPA, Plaintiff Meyers separately provided written notice to Defendants identifying the specific provisions of this title he alleges Defendants have violated. Defendants failed to "actually cure" their violations of Cal. Civ. Code § 1798.150(a) within the thirty (30) day notice period, or at any time since. While Dollar Tree responded to Plaintiff Meyer's written notice, Dollar Tree's response entirely failed to demonstrate that they had "actually cure(d)" their violations of Cal. Civ. Code § 1798.150(a).

Defendant Zeroed-In never responded to Plaintiff Meyer's written notice and has therefore also failed to demonstrate that it had "actually cure(d)" its violations of Cal. Civ. Code § 1798.150(a).

>   **ANSWER:**    **Paragraph 84 of the Complaint states conclusions of law, and pursuant to the Court's March 26, 2025 Memorandum Opinion (ECF No. 126), Plaintiff Meyer's claims pursuant to the California Consumer Privacy Act are dismissed; therefore, no answer is required to the allegations in paragraph 84 of the Complaint. To the extent an answer is required, said allegations are denied.**

### *Plaintiff Brittany Mintz*

85.    Plaintiff Brittany Mintz is an adult individual and a natural person of Missouri, residing in Jackson County, where she intends to stay.

>   **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 85 of the Complaint, and accordingly, those allegations are hereby denied.**

86.    Plaintiff Mintz, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Mintz's Private Information was stored and maintained by Defendant Zeroed-In.

>   **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 86 of the Complaint, and accordingly, those allegations are hereby denied.**

87.    Plaintiff Mintz received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 87 of the Complaint, and accordingly, those allegations are hereby denied.**

88.    The notice letter informed Plaintiff Mintz that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 88 the Complaint.**

### *Plaintiff Christian Moss*

89.    Plaintiff Christian Moss is an adult individual and a natural person of North Carolina, residing in Person County, where she intends to stay.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 89 of the Complaint, and accordingly, those allegations are hereby denied.**

90.    Plaintiff Moss, a former employee of Family Dollar, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Moss's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 90 of the Complaint, and accordingly, those allegations are hereby denied.**

91.    Plaintiff Moss received a notice letter from Defendant Zeroed-In, on or about December 13, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

**ANSWER:    Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 91 of the Complaint, and accordingly, those allegations are hereby denied.**

92.    The notice letter informed Plaintiff Moss that her Social Security number, among other things, was compromised in the Data Breach.

**ANSWER:    Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 92 the Complaint.**

### *Plaintiff Rosie Player*

93.    Plaintiff Rosie Player is an adult individual and a natural person of Ohio, residing in Montgomery County, where she intends to stay.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 93 of the Complaint, and accordingly, those allegations are hereby denied.**

94.    Plaintiff Player, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Player's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 94 of the Complaint, and accordingly, those allegations are hereby denied.**

95.    Plaintiff Player received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 95 of the Complaint, and accordingly, those allegations are hereby denied.**

96.    The notice letter informed Plaintiff Player that her name, date of birth, and Social Security number were compromised in the Data Breach.

> **ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 96 the Complaint.**

### *Plaintiff Alyssa Rivera*

97.    Plaintiff Alyssa Rivera is an adult individual and a natural person of Florida, residing in Volusia County, where she intends to stay.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 97 of the Complaint, and accordingly, those allegations are hereby denied.**

98.    Plaintiff Alyssa Rivera, a former employee of Dollar Tree, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Alyssa Rivera's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 98 of the Complaint, and accordingly, those allegations are hereby denied.**

99.    Plaintiff Alyssa Rivera received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 99 of the Complaint, and accordingly, those allegations are hereby denied.**

100.    The notice letter informed Plaintiff Alyssa Rivera that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:**    **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 100 the Complaint.**

### _Plaintiff Cynthia Rivera_

101.    Plaintiff Cynthia Rivera is an adult individual and a natural person of New York, residing in Staten Island, where she intends to stay.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 101 of the Complaint, and accordingly, those allegations are hereby denied.**

102.    Plaintiff Cynthia Rivera, a former employee of Family Dollar, provided her PII to Family Dollar as a condition of employment. Upon information and belief, Plaintiff Cynthia Rivera's Private Information was stored and maintained by Defendant Zeroed-In.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 102 of the Complaint, and accordingly, those allegations are hereby denied.**

103.    Plaintiff Cynthia Rivera received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 103 of the Complaint, and accordingly, those allegations are hereby denied.**

104.    The notice letter informed Plaintiff Cynthia Rivera that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:** **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued.  Zeroed-In denies the remaining allegations contained in paragraph 104 the Complaint.**

### *Plaintiff Brandy Sinnett*

105.   Plaintiff Brandy Sinnett is an adult individual and a natural person of Ohio, residing in Wayne County, where she intends to stay.

> **ANSWER:**   **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 105 of the Complaint, and accordingly, those allegations are hereby denied.**

106.   Plaintiff Sinnett, a former employee of Family Dollar, provided her PII to Dollar Tree as a condition of employment. Upon information and belief, Plaintiff Sinnett's Private Information was stored and maintained by Defendant Zeroed-In.

> **ANSWER:**   **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 106 of the Complaint, and accordingly, those allegations are hereby denied.**

107.   Plaintiff Sinnett received a notice letter from Defendant Zeroed-In, dated November 27, 2023, informing her of the Data Breach and the unauthorized exposure of her Private Information.

> **ANSWER:**   **Zeroed-In admits its legal counsel provided written notification of the ransom event and that notice was appropriate and promptly issued. Zeroed-In denies the notice letter informed recipients of an "unauthorized exposure" of private information. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 107 of the Complaint, and accordingly, those allegations are hereby denied.**

108.   The notice letter informed Plaintiff Sinnett that her name, date of birth, and Social Security number were compromised in the Data Breach.

**ANSWER:**     **Zeroed-In admits its legal counsel provided written notification of the ransom event that stated "information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number," and that notice was appropriate and promptly issued. Zeroed-In denies the remaining allegations contained in paragraph 108 the Complaint.**

## B. DEFENDANTS

### *Defendant Zeroed-In Technologies, LLC*

109.   Defendant Zeroed-In Technologies, LLC is a Florida registered limited liability company with a principal place of business located at 780 Elkridge Landing Road, Suite 208, Linthicum, Maryland. Upon information and belief, members of Zeroed-In include Keith A. Goode[4] and Chris Moore. Respectively, upon investigation of counsel, Keith Goode is domiciled in the state of Maryland, where public records indicate he resides and intends to stay.

**ANSWER:**     **Zeroed-In admits it transferred its limited liability company to Florida through a domestication process; its primary office location is located at 780 Elkridge Landing Road, Suite 208, Linthicum, Maryland; its limited liability members include Keith A. Goode, who is located in Maryland; and its founder and Chief Technology Officer, Chris Moore, maintains a residence in the state of Maryland. Zeroed-In denies the remaining allegations contained in paragraph 109 the Complaint.**

110.   Zeroed-In is a data management company which provides human resources data analytics software products to businesses. Zeroed-In's data analytics products include data extraction, data staging, data transformation, and graphing or charting of data.[5]

**ANSWER:**     **Zeroed-In admits it is a small data and technology firm that provides workforce analytical services to its customers and that its website**

---

[4] Keith A. Goode is listed as Vice President of Client Services on the Zeroed-In website. Keith Goode is also listed as the Maryland resident agent for Zeroed-In Technologies, LLC on its website. *See Zeroed-In Leadership – Keith Goode*, ZEROED-IN, https://www.zeroedin.com/team-keith-goode/ (last visited April 12, 2024).

[5] *Our Solutions*, ZEROED-IN, https://www.zeroedin.com/our-solutions/ (last visited April 12, 2024).

advertises that its services help clients "extract, stage, and visualize your most essential data." Zeroed-In denies the remaining allegations contained in paragraph 110 of the Complaint because said allegations do not fully and accurately describe Zeroed-In and the services and software it provides.

111.    Zeroed-In has over 70 institutional clients, 30,000 registered users of its data analytics software, and 2.7 million "work lives."[6]

ANSWER:    Zeroed-In denies that the allegations in paragraph 111 of the complaint fully and accurately describe its clientele and users and, therefore, said allegations are denied.

### *Defendant Dollar Tree, Inc.*

112.    Defendant Dollar Tree, Inc. is a publicly traded corporation incorporated in Virginia, with its principal place of business located at 500 Volvo Parkway, Chesapeake, Virginia 23320. It hosts and manages dollar stores in locations around the United States and Canada.

ANSWER:    Upon information and belief, Zeroed-In admits that Dollar Tree, Inc. is a Virginia corporation. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 112 of the Complaint, and accordingly, those allegations are hereby denied.

113.    At all relevant times, Defendant Dollar Tree, Inc. was a client of Defendant Zeroed-In, utilizing Zeroed-In's human resources data analytics products.[7] Accordingly, Dollar Tree, Inc. shares human resources PII with Defendant Zeroed-In, its third-party data analytics vendor.

ANSWER:    Zeroed-In admits it provides workforce analytical services to Dollar Tree, and Dollar Tree provides Zeroed-In with certain information of

---

[6] *About*, ZEROED-IN, https://www.zeroedin.com/about-zeroedin/ (last visited April 12, 2024).
[7] *See* Bill Toulas, *Dollar Tree hit by third-party data breach impacting 2 million people*, BLEEPINGCOMPUTER (Nov. 29, 2023), https://www.bleepingcomputer.com/news/security/dollar-tree-hit-by-third-party-data-breach-impacting-2-million-people/.

> **employees for human resources analytical services. Zeroed-In denies the remaining allegations contained in paragraph 113 the Complaint.**

114.  According to Dollar Tree's most recent SEC Quarterly Report, it operates more than 16,600 retail discount stores across the United States and Canada under two reporting segments, Dollar Tree and Family Dollar.[8]

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 114 of the Complaint, and accordingly, those allegations are hereby denied.**

### *Defendant Family Dollar, LLC*

115.  Defendant Family Dollar, LLC was formed in North Carolina and has its principal place of business at 500 Volvo Parkway, Chesapeake, VA 23330. Family Dollar was acquired by Dollar Tree, Inc. on July 6, 2015.[9]

> **ANSWER:    Upon information and belief, Zeroed-In admits that Family Dollar, LLC is incorporated in North Carolina and headquartered in Virginia. Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 115 of the Complaint, and accordingly, those allegations are hereby denied.**

## FACTUAL ALLEGATIONS

### A. DATA ANALYTICS

116.  Data analytics is the use of "data techniques and tools that identify patterns and trends," which subsequently produce useful insights that buttress informed decision-making.[10]

---

[8] Dollar Tree, Quarterly Report (Form 10-Q) (Oct. 28, 2023), *available at* https://corporate.dollartree.com/investors/sec-filings/content/0000935703-23-000063/dltr-20231028.htm.

[9] 9 *Our Dollar Tree, Inc. Story*, DOLLAR TREE, https://corporate.dollartree.com/about/our-history (last visited April 12, 2024).

[10] *What Is Data Analytics: The Ultimate Guide*, COMPTIA, https://www.comptia.org/content/guides/what-is-data-analytics (last visited April 12, 2024).

> **ANSWER:**     **Zeroed-In admits the cited website contains the phrase "data, techniques and tools that identify patters and trends" but denies that the allegations in paragraph 116 of the Complaint fully and accurately describe data analytics and, therefore, said allegations are denied.**

117.    The main purpose of data analytics is to tackle an organization's particular issues or questions (e.g., understand consumers, improve internal processes, generate business opportunities, etc.) to encourage better business results.[11]

> **ANSWER:**     **Zeroed-In denies that the allegations in paragraph 117 of the Complaint fully and accurately describe the purpose of data analytics and, therefore, said allegations are denied.**

118.    There are six steps in the data analysis process:[12]

  1) **Specification of data requirements** – A data analyst asks the stakeholder(s) (i.e., people who have invested resources into a data analysis project) the tasks and expectations for the data analysis project.

  2) **Collection of data** – After specifying data requirements, the data analyst obtains relevant raw data from several sources (e.g., interviews, articles, reports) and stores the data in a spreadsheet or database.

  3) **Processing of data** – Following collection and storage, the data analyst 'cleans' the raw data by checking it for misspellings, irrelevancies, duplicates, formatting, and bias. In this stage, the data analyst may also convert the raw data into a format suitable for analysis by certain applications, such as Microsoft Excel or Structured Query Language ("SQL").

---

[11] *Id.*

[12] *Six Steps of Data Analysis Process*, GEEKSFORGEEKS (last updated Jan. 10, 2024), https://www.geeksforgeeks.org/six-steps-of-data-analysis-process/.

4) **Analysis of data** – Once the raw data is appropriately processed, the data analyst assesses the raw data to identify patterns and insights therefrom. Analysis of data may involve performing calculations and comparing data for better results. In this stage, certain data analysis software and/or programming languages are used, such as Excel, SQL, Python, and the R-language.

5) **Dissemination of data** – Upon analyzing the raw data, the data analyst performs "visualizations" of his or her analyses. To "visualize" analyses, the data analyst will use specialized software to create graphs and/or charts illustrating the analyst's findings. The data analyst will share the finalized visualizations with stakeholders for informed decision-making.

6) **Acting on the data** – Considering the data analyst's visualized findings about the issue assessed by the analyst, stakeholders will then decide what action to take.

**ANSWER:**    **Zeroed-In denies that the allegations in paragraph 118 of the Complaint fully and accurately describe data analytics and, therefore, said allegations are denied.**

119.   Data analytics can be performed in-house (by the organization itself) or outsourced to companies specializing in data analytics.[13]

**ANSWER:**    **Zeroed-In denies that the allegations in paragraph 119 of the Complaint fully and accurately describe data analytics and, therefore, said allegations are denied.**

---

[13] *Advantages of outsourcing data analytics*, OP360 (Dec. 27, 2021), https://www.op360.com/blog/outsourcing-data-analytics/.

120.    An organization may choose to outsource its data analytics needs to a third-party data analytics company because of, among other motives, the cost and time required to maintain an internal data analytics team.

    **ANSWER:**    **Zeroed-In denies that the allegations in paragraph 120 of the Complaint fully and accurately describe data analytics and, therefore, said allegations are denied.**

121.    In the instant case, Defendant Dollar Tree outsourced its data analytics needs to Defendant Zeroed-In by utilizing Zeroed-In's human resources data analysis software.

    **ANSWER:**    **Zeroed-In admits it provides workforce analytical services to Dollar Tree. Zeroed-In denies the remaining allegations contained in paragraph 121 the Complaint.**

## B. DEFENDANT ZEROED-IN'S DATA COLLECTION PRACTICES

122.    Defendant Zeroed-In collects PII from its "customers"—including Dollar Tree—"for hosting and processing purposes in connection with a subscription to [Zeroed-In's] products or services[.]"[14]

    **ANSWER:**    **Zeroed-In admits the Privacy Policy on its website states, in part, that "customers may electronically submit personal information to use for hosting and processing purposes in connection with a subscription to our products or services ('Customer Data')." Zeroed-In denies that the allegations in paragraph 122 of the Complaint fully and accurately describe its data collection practices or Privacy Policy and, therefore, it denies the remaining allegations contained in paragraph 122 of the Complaint.**

123.    At all relevant times herein, Dollar Tree was a customer of Zeroed-In and subscribed to Zeroed-In's data analytics software products and services.

---

[14] *Privacy Policy*, ZEROED-IN, https://www.zeroedin.com/privacy-policy/ (last visited April 12, 2024).

**ANSWER:**    Zeroed-In admits it provides workforce analytical services to Dollar Tree.    Zeroed-In denies the remaining allegations contained in paragraph 123 of the Complaint.

124.    As Dollar Tree's third-party vendor for human resources data analytics services, Defendant Zeroed-In collected from Dollar Tree the PII of Dollar Tree's current and former employees, including but not limited to names, dates of birth, and Social Security numbers.

**ANSWER:**    Zeroed-In admits it provides workforce analytical services to Dollar Tree, and Dollar Tree provides Zeroed-In with certain information for human resources analytical services. Zeroed-In denies the remaining allegations contained in paragraph 124 of the Complaint.

125.    Defendant Zeroed-In specifies in its Privacy Policy that it uses the PII it collects from customers like Dollar Tree "to perform the services requested by the user[,] . . . for marketing purposes[,]" to manage and improve the webpages through which Zeroed-In operates and collects data, to facilitate the utilization of such webpages, and to "track aggregate traffic patterns throughout" such webpages.[15]

**ANSWER:**    Zeroed-In admits the Privacy Policy on its website states, in part, as follows:

**USE OF COLLECTED INFORMATION**

**We use Contact Info we collect to perform the services requested by the user. For example, if you fill out a "contact me" form, we will use your information to contact you about your interest in our products and services. We may also use Contact Info for marketing purposes. For example, we may use your information to contact you to further discuss your interest in our products and services and to send you information regarding us and our partners, such as information about promotions or events.**

**We use Usage Info to operate and improve the Sites, to diagnose technical problems with the Sites, to facilitate your use of the Sites, and**

---

[15] *Id.*

> **to track aggregate traffic patterns throughout the Sites. We may also use this information alone or in combination with your Contact Info to provide you with personalized information about our products and services.**
>
> **Zeroed-In denies that the allegations in paragraph 125 of the Complaint fully and accurately describe its data collection practices or Privacy Policy and, therefore, it denies the remaining allegations contained in paragraph 125 of the Complaint.**

## C. THE DATA BREACH

126.   On August 8, 2023, Defendant Zeroed-In detected suspicious activity on its network systems, prompting Zeroed-In to "launch an investigation into the nature and scope of the activity."[16]

> <u>**ANSWER:**</u>   **Zeroed-In admits that on August 8, 2023, it discovered suspicious activity related to certain network systems and that it immediately took steps to secure the systems and launched an investigation into the nature and scope of the activity. Zeroed-In denies the remaining allegations contained in paragraph 126 of the Complaint.**

127.   Through its investigation, Zeroed-In confirmed "that an unauthorized actor gained access to certain [of Zeroed-In's] systems between August 7, 2023 and August 8, 2023."[17]

> <u>**ANSWER:**</u>   **Zeroed-In admits that through the investigation, it was determined that an unauthorized actor gained access to certain systems between August 7, 2023 and August 8, 2023. Zeroed-In denies the remaining allegations contained in paragraph 127 of the Complaint.**

---

[16] *Data Breach Notifications – Zeroed-In*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236.shtml (last visited April 12, 2024) (click hyperlink to "**Notice of Data Event - Zeroed In - ME.pdf**.").

[17] *Id*

128. Zeroed-In was able to determine which of its systems were accessed but claimed "it was not able to confirm all of the specific files that were accessed or taken by the unauthorized actor."[18]

> **ANSWER:** **Zeroed-In admits that the investigation was able to determine that certain systems were accessed but it was not able to confirm all of the specific files that were accessed or taken by the unauthorized actor. Zeroed-In further admits it did not conclusively determine that private information was accessed or stolen, and it made a substantial ransom payment in exchange for certain assurances to ensure that private information would not be misused or disclosed. Zeroed-In denies the remaining allegations contained in paragraph 128 of the Complaint.**

129. Zeroed-In conducted a "review" of the contents of its compromised systems to pinpoint "what information was present at the time of the incident, to whom the information relates, and to which Zeroed-In customers the information belonged."[19]

> **ANSWER:** **Zeroed-In admits it conducted a review of the contents of the systems to determine what information was present at the time of the incident, to whom the information relates, and to which Zeroed-In customers the information belonged. Zeroed-In further admits it did not conclusively determine that private information was accessed or stolen, and it made a substantial ransom payment in exchange for certain assurances to ensure that private information would not be misused or disclosed. Zeroed-In denies the remaining allegations contained in paragraph 129 of the Complaint.**

130. Upon conclusion of the "review" of its systems on August 31, 2023, Zeroed-In determined that the following data types were compromised in the Data Breach: individual names, dates of birth, and Social Security numbers.[20]

---

[18] *Id.*
[19] *Id.*
[20] *Id.*

> **ANSWER:** **Zeroed-In admits it completed its review of the contents of the systems on August 31, 2023 and that the information present on the systems at the time of the incident includes, names, dates of birth, and/or Social Security number. Zeroed-In further admits it did not conclusively determine that private information was accessed or stolen, and it made a substantial ransom payment in exchange for certain assurances to ensure that private information would not be misused or disclosed. Zeroed-In denies the remaining allegations contained in paragraph 130 of the Complaint.**

131.   Both Dollar Tree and Family Dollar were affected by the Data Breach.[21]

> **ANSWER:** **Zeroed-In admits it provided notice of the ransom event to Dollar Tree and Family Dollar. Zeroed-In denies the remaining allegations contained in paragraph 131 of the Complaint.**

132.   Upon information and belief, the Private Information of approximately 1.97 million individuals was compromised and exposed in the Data Breach.[22]

> **ANSWER:** **Zeroed-In admits that at the time it reported to the Maine Attorney General, it understood that the total number of persons affected by the ransom event was 1,977,486. Zeroed-In further admits it did not conclusively determine that private information of any affected individuals was accessed or stolen, and it made a substantial ransom payment in exchange for certain assurances to ensure that private information would not be misused or disclosed. Zeroed-In denies the remaining allegations contained in paragraph 132 of the Complaint.**

133.   Upon information and belief, the Private Information collected by Dollar Tree, provided to Zeroed-In, and compromised in the Data Breach belongs to current and former employees of Dollar Tree.[23]

---

[21] *Id.*

[22] *See Data Breach Notifications – Zeroed-In*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236.shtml (last visited April 12, 2024).

[23] *See* Sead Fadilpasic, *Dollar Tree confirms significant data breach*, TECHRADAR (Nov. 30, 2023), https://www.techradar.com/pro/security/dollar-treedata-breach-could-affect-millions-of-customers (reporting that a spokesperson for Defendant Dollar Tree stated that Defendant

> **ANSWER:** **Zeroed-In admits that certain information provided by Dollar Tree was present on the systems at the time of the incident. Zeroed-In further admits it did not conclusively determine that private information was accessed or stolen, and it made a substantial ransom payment in exchange for certain assurances to ensure that private information would not be misused or disclosed. Zeroed-In denies the remaining allegations contained in paragraph 133 of the Complaint.**

134.    On November 27, 2023, Defendant Zeroed-In uploaded a "Notice of Data Event" letter on the Maine Attorney General website, notifying Maine residents of the Data Breach.[24] Zeroed-In sent a similar notice letter to impacted individuals (the "Notice Letter").

> **ANSWER:** **Zeroed-In admits that on November 27, 2023, its legal counsel provided notice of the ransom event to the Maine Attorney General and uploaded a copy of the notice to Maine residents on the Office of the Maine Attorney General's website titled "Notice of Data Event – Zeroed In – ME.pdf." Zeroed-In denies the remaining allegations contained in paragraph 134 of the Complaint.**

135.    Omitted from the Notice Letter are the details of the root cause of the Data Breach, the vulnerabilities exploited, and the specific remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs or Class Members, who retain a vested interest in ensuring that their Private Information remains confidential and secure.

> **ANSWER: Denied.**

---

Zeroed-In provided notice of the Data Breach to current and former employees of Dollar Tree and Family Dollar).

[24] *Data Breach Notifications – Zeroed-In*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236.shtml (last visited April 12, 2024).

136.    Thus, Defendants' "disclosure" of the Data Breach amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class Members of critical facts of the Data Breach. Without these details, Plaintiffs and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

**ANSWER:    Denied.**

137.    Defendants failed to use reasonable data security procedures and practices appropriate to the nature of the sensitive information they collected, stored, and maintained—such as encrypting the information or deleting it when it is no longer needed—resulting in a massive data breach that exposed Plaintiffs' and Class Members' Private Information. Moreover, Dollar Tree failed to exercise due diligence in selecting its vendor(s) with whom they would share sensitive employee Private Information.

**ANSWER:    Denied.**

138.    As a result, cybercriminals accessed and acquired files containing unencrypted Private Information belonging to Plaintiffs and Class Members, including their names, dates of birth, and Social Security numbers. Plaintiffs' and Class Members' Private Information was accessed and stolen in the Data Breach.

**ANSWER:    Denied.**

139.    On information and belief, Plaintiffs' and Class Members' Private Information was subsequently published and sold on the dark web, as Plaintiffs experienced fraudulent misuse of their compromised information following the Data Breach and that is the modus operandi of cybercriminals that commit cyberattacks of this type.

**ANSWER:**     **Denied.**

**D. THE VALUE OF PII**

140.     An active, robust, and legitimate marketplace for PII exists. In 2019, the data brokering industry was worth roughly $200 billion.[25]

> **ANSWER:**     **Responding to paragraph 140 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

141.     "Ransomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[26]

> **ANSWER:**     **Responding to paragraph 141 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

---

[25] David Lazarus, *Shadowy data brokers make the most of their invisibility cloak*, LA TIMES (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers.
[26] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (April 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/.

142. In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[27]

> **ANSWER:** **Responding to paragraph 142 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

143. Stolen PII is often trafficked on the dark web, as is the case here. Law enforcement has difficulty policing the dark web due to encryption, which allows users and criminals to conceal identities and online activity.

> **ANSWER:** **Responding to paragraph 143 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

---

[27] *See Ransomware Guide*, Multi-State Information Sharing & Analysis Center (Sept. 2020), https://www.cisa.gov/sites/default/files/publications/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf.

144.    When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, the stolen information often ends up on the dark web because the malicious actors buy and sell the information for profit.[28]

> **ANSWER:**    **Responding to paragraph 144 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

145.    Another example is when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is its pervasiveness. As data breaches in the news continue to show, PII about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[29]

> **ANSWER:**    **Responding to paragraph 145 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining**

---

[28] *Shining a Light on the Dark Web with Identity Monitoring,* IDENTITYFORCE (updated Feb. 1, 2020), https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring.

[29] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR CLOUD SECURITY (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/.

**allegations contained therein, and accordingly, those allegations are hereby denied.**

146.    The PII of consumers is of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200.[30] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[31]

> **ANSWER:**    **Responding to paragraph 146 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

147.    Social Security numbers are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from

---

[30] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[31] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[32]

> **ANSWER:** **Responding to paragraph 147 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

148.   What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

> **ANSWER:** **Responding to paragraph 148 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

149.   Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "credit bureaus and banks are able to

---

[32] *Identity Theft and Your Social Security Number*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited April 12, 2024).

link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[33]

> **ANSWER:** **Responding to paragraph 149 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

150.    Because of this, the information compromised in the Data Breach here is significantly more harmful to lose than other types of data because the information compromised in this Data Breach is difficult, if not impossible, to change.

> **ANSWER:** **Denied.**

151.    The PII compromised in the Data Breach also demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[34]

> **ANSWER:** **Zeroed-In denies the first sentence of paragraph 151 of the Complaint. Responding to the second sentence of paragraph 151 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is**

---

[33] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen- by-anthem-s-hackers-has-millions-worrying- about-identity-theft (last visited April 12, 2024).

[34] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, REDSEAL, (Feb. 6, 2015), https://www.redseal.net/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers/.

**without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein, and accordingly, those allegations are hereby denied.**

152.  Once PII is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional PII being harvested from the victim, as well as PII from family, friends, and colleagues of the original victim.

**ANSWER:**    **Responding to paragraph 152 of the Complaint, Zeroed-In denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

153.  According to the FBI's Internet Crime Complaint Center (IC3) 2023 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2023, resulting in more than $12.5 billion in losses to individuals and business victims, a twenty-two (22) percent increase in losses suffered compared to 2022.[35]

**ANSWER:**    **Responding to paragraph 153 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

---

[35] See Federal Bureau of Investigation Internet Crime Report 2023, INTERNET CRIME COMPLAINT CENTER, *available at* https://www.ic3.gov/Media/PDF/AnnualReport/2023IC3Report.pdf.

154.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

> **ANSWER:    Responding to paragraph 154 of the Complaint, Zeroed-In denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

155.    Data breaches facilitate identity theft as hackers obtain consumers' PII and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' PII to others who do the same.

> **ANSWER:    Responding to paragraph 155 of the Complaint, Zeroed-In denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

156.    For example, the United States Government Accountability Office noted in a June 2007 report on data breaches (the "GAO Report") that criminals use PII to open financial accounts, receive government benefits, and make purchases and secure credit in a victim's name.[36] The GAO Report further notes that this type of identity fraud is the most harmful because it may take some time for a victim to become aware of the fraud, and can adversely impact the victim's credit rating in the meantime. The GAO Report also states that identity

---

[36] *See Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 5, 2007), https://www.gao.gov/products/gao-07-737.

theft victims will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."[37]

> **ANSWER:** **Responding to paragraph 156 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

157. The exposure of Plaintiffs' and Class Members' PII to cybercriminals will continue to cause substantial risk of future harm (including identity theft) that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third- party cybercriminals to profit off of this highly sensitive information.

> **ANSWER:** **Denied.**

## E. DEFENDANTS FAILED TO MEET REASONABLE AND ADEQUATE DATA SECURITY STANDARDS.

158. The FTC has issued several guidance documents for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[38]

> **ANSWER:** **Responding to paragraph 158 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims**

---

[37] *Id.*

[38] *Start With Security: A Guide for Businesses (Lessons Learned from FTC Cases)*, FED. TRADE COMM'N ("FTC") (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

**against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

159.    The FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[39]

> **ANSWER:** **Responding to paragraph 159 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

160.    The FTC guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

> **ANSWER:** **Responding to paragraph 160 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

---

[39] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

161.   The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to private information, mandate complex passwords to be used on networks, utilize industry-standard methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[40]

> **ANSWER:** **Responding to paragraph 161 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

162.   The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

> **ANSWER:** **Paragraph 162 of the Complaint states conclusions of law as  to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in this paragraph of the Complaint. To the extent Plaintiffs' allegations incorporate the text of a statute, the statute speaks for itself.**

---

[40] *Start With Security: A Guide for Businesses (Lessons Learned from FTC Cases)*, Fed. Trade Comm'n ("FTC") (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

163.    Defendant Zeroed-In's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

> **ANSWER:**    **Paragraph 163 of the Complaint states conclusions of law as to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 163 of the Complaint.**

164.    Dollar Tree's failure to verify that Zeroed-In, a third-party service provider, had implemented reasonable security measures constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

> **ANSWER:**    **Paragraph 164 of the Complaint states conclusions of law as to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 164 of the Complaint.**

165.    Plaintiffs and Class Members gave their PII to Dollar Tree with the reasonable expectation and understanding that Dollar Tree would comply with its duty to keep such information confidential and secure from unauthorized access.

> **ANSWER:**    **Denied.**

166.    Defendant Zeroed-In stated in its Privacy Policy conflicting terms and conditions that it would safeguard PII without guaranteeing security:

> **SECURITY**
>
> We employ robust security measures to protect against the loss, misuse and alternation of the personal information under our control. The [webpages through which Zeroed-In operates and collects data] employ Secure Socket Layer (SSL) technology using both server authentication and data encryption. The [webpages through which Zeroed-In operates and collects data] are hosted in a secure server environment that uses firewalls, intrusion detection

systems, and other advanced technology to protect against interference or access from outside intruders.

However, no method of transmission over the Internet, or method of electronic storage, is 100% secure. Therefore, *we cannot guarantee absolute security*. It is your responsibility to ensure you are accessing the [webpages through which Zeroed-In operates and collects data] and Service Platform using an up-to-date web browser. You are also responsible for maintaining the security and confidentiality of any usernames and passwords associated with the [webpages through which Zeroed-In operates and collects data].

*Keeping your personal information secure is our first priority*.[41]

**ANSWER:**    **Zeroed-In admits the Privacy Policy on its website states, in part, as follows:**

**SECURITY**
**We employ robust security measures to protect against the loss, misuse and alternation of the personal information under our control. The Sites employ Secure Socket Layer (SSL) technology using both server authentication and data encryption. The Sites are hosted in a secure server environment that uses firewalls, intrusion detection systems, and other advanced technology to protect against interference or access from outside intruders.**

**However, no method of transmission over the Internet, or method of electronic storage, is 100% secure. Therefore, we cannot guarantee absolute security. It is your responsibility to ensure you are accessing the Sites and Service Platform using an up-to-date web browser. You are also responsible for maintaining the security and confidentiality of any usernames and passwords associated with the Sites.**

**Keeping your personal information secure is our first priority. We encourage responsible reporting of any vulnerability that may be found in the Sites or Service Platform. We are committed to working with the security community to verify and respond to any potential vulnerability that is reported to us. To report a potential vulnerability or make an inquiry about security on the Sites or Service Platform, please send an e-mail with details to support@zeroedin.com. Please provide full**

---

[41] *Privacy Policy*, ZEROED-IN TECHNOLOGIES, https://www.zeroedin.com/privacy-policy/ (last visited Jan. 17, 2024).

> **details of the suspected vulnerability so our security team may validate and reproduce the issue.**
>
> **Zeroed-In denies that the allegations in paragraph 166 of the Complaint fully and accurately describe its data collection practices or Privacy Policy and, therefore, it denies the remaining allegations contained in paragraph 166 of the Complaint.**

167.    Defendants have been on notice for years that Plaintiffs' and Class Members' PII was a target for bad actors because, among other motives, the high value of the PII created, collected, stored, and maintained by Defendants.

**ANSWER:    Denied.**

168.    Despite such awareness, Defendants failed to impose and maintain reasonable and appropriate data security controls to protect Plaintiffs' and Class Members' PII from unauthorized access that Defendants should have anticipated and guarded against.

**ANSWER:    Paragraph 168 of the Complaint contains conclusions of law to which no answer is required. To the extent an answer is required, said allegations are denied.**

169.    Defendant Zeroed-In was fully aware of its obligation to protect the PII of its customers because of its collection, storage, and maintenance of PII. Defendant Zeroed-In was also aware of the significant consequences that would ensue if it failed to do so because it collected, stored, and maintained sensitive private information from millions of individuals and knew that this information, if hacked, would result in injury to Plaintiffs and Class Members.

**ANSWER:    Paragraph 169 of the Complaint contains conclusions of law to which no answer is required. To the extent an answer is required, said allegations are denied.**

170. Dollar Tree was also fully aware of its obligation to protect the PII of its current and former employees because of its collection, storage, and maintenance of PII. Dollar Tree was aware of the significant consequences that would ensue if it failed to do so because it collected, stored, and maintained sensitive private information from thousands of individuals and knew that this information, if hacked, would result in injury to Plaintiffs and Class Members.

> **ANSWER:** **The allegations in paragraph 170 of the Complaint are not directed to Zeroed-In and therefore no answer is required. To the extent an answer is required, Zeroed-In denies said allegations.**

171. Despite understanding the consequences of insufficient data security, Defendants failed to adequately protect Plaintiffs' and Class Members' PII, permitting bad actors to access and misuse it.

> **ANSWER:** **Denied.**

### F. DEFENDANTS FAILED TO COMPLY WITH INDUSTRY STANDARDS.

172. Various cybersecurity industry best practices have been published and should be consulted as a go-to resource when developing an organization's cybersecurity standards. The Center for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most commonplace and essential cyber-attacks that affect businesses every day and proposes solutions to defend against those cyber-attacks.[42] All organizations collecting and handling PII, such as Defendants, are strongly encouraged to follow these controls.

> **ANSWER:** **Responding to paragraph 172 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims**

---

[42] *Critical Security Controls*, CENTER FOR INTERNET SECURITY (May 2021), *available at* https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.

**against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

173.  Further, the CIS Benchmarks are the overwhelming option of choice for auditors worldwide when advising organizations on the adoption of a secure build standard for any governance and security initiative, including PCI DSS, HIPAA, NIST 800-53, SOX, FISMA, ISO/IEC 27002, Graham Leach Bliley and ITIL.[43]

> **ANSWER:**    **Responding to paragraph 173 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

174.  Cybersecurity experts normally have identified data management companies, like Defendant Zeroed-In, as being particularly vulnerable to cyberattacks because of the value of the PII which they collect, use, and maintain.[44]

> **ANSWER:**    **Responding to paragraph 174 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining**

---

[43] *See CIS Benchmarks FAQ*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq/ (last visited April 12, 2024).

[44] *See* Joao-Pierre S. Ruth, *Security Questions to Ask After the Zeroed-In Breach*, INFORMATION WEEK (Dec. 5, 2023), https://www.informationweek.com/cyber-resilience/security-questions-to-ask-after-the-zeroedin-breach (commenting that the growing outsourcing of data analytics work to third-party service providers may offer to malicious cyber-attackers novel "targets of opportunity" – breach one data manager and gain access to data from a multitude of sources).

**allegations contained therein, and accordingly, those allegations are hereby denied.**

175.    Several best practices have been identified that a minimum should be implemented by data management companies like Defendant Zeroed-In, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[45]

> **ANSWER:    Responding to paragraph 175 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

176.    Other best practices have been identified that a minimum should be implemented by companies like Dollar Tree using third-party providers, including but not limited to ensuring that PII is only shared with third parties when reasonably necessary and that those vendors have appropriate cybersecurity systems and protocols in place.[46]

> **ANSWER:    Responding to paragraph 176 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

---

[45] *See Critical Security Controls*, CENTER FOR INTERNET SECURITY (May 2021), *available at* https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.

[46] *See id.*

177.    Defendants failed to follow these and other industry standards to adequately protect the Private Information of Plaintiffs and Class Members.

**ANSWER:      Denied.**

### G. THE DATA BREACH CAUSED HARM AND WILL RESULT IN ADDITIONAL FRAUD.

178.    Without detailed disclosure to the victims of the Data Breach, individuals whose Private Information was compromised by the Data Breach, including Plaintiffs and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their Private Information for months without being able to take available precautions to prevent imminent harm.

**ANSWER:      Denied.**

179.    The ramifications of Defendant Zeroed-In's failure to secure Plaintiffs' and Class Members' data are severe.

**ANSWER:      Denied.**

180.    Victims of data breaches are much more likely to become victims of identity theft and other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

**ANSWER:      Responding to paragraph 180 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining**

**allegations contained therein, and accordingly, those allegations are hereby denied.**

181.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[47] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[48]

> **ANSWER:    Responding to paragraph 181 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In. Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

182.    Identity thieves can use PII, such as that of Plaintiffs and Class Members, which Defendants failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

> **ANSWER:    Denied.**

183.    As demonstrated herein, these and other instances of fraudulent misuse of the compromised PII has already occurred and are likely to continue.

---

[47] 17 C.F.R § 248.201 (2013).
[48] *Id.*

**ANSWER:**    **Denied.**

184.    As a result of Defendant Zeroed-In's delay between the Data Breach in August 2023 and the notice of the Data Breach sent to affected persons in November 2023, the risk of fraud for Plaintiffs and Class Members increased exponentially.

**ANSWER:**    **Denied.**

185.    Javelin Strategy and Research reports that identity thieves have stolen $112 billion in the past six years.[49]

**ANSWER:**    **Responding to paragraph 185 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

186.    Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[50]

---

[49] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits-inflection-point (last visited April. 14, 2024).
[50] *Victims of Identity Theft*, Bureau of Justice Statistics (Sept. 2015) available at: https://bjs.ojp.gov/library/publications/victims-identity-theft-2014 (last visited April 14, 2024).

**ANSWER:**   **Responding to paragraph 186 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

187.   There may be a time lag between when harm occurs versus when it is discovered, and also between when private information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[51]

**ANSWER:**   **Responding to paragraph 187 of the Complaint, to the extent Plaintiffs' allegations incorporate any publications, Zeroed-In denies the substance of the publication referenced by Plaintiffs and denies the allegations in this paragraph of the Complaint as it relates to the claims against Zeroed-In.  Further, Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained therein, and accordingly, those allegations are hereby denied.**

188.   Thus, Plaintiffs and Class Members now constant surveillance of their financial and personal records, monitoring, and loss of rights, for the foreseeable future.

**ANSWER:**   **Denied.**

**H. PLAINTIFFS AND CLASS MEMBERS SUFFERED DAMAGES.**

---

[51] GAO, Report to Congressional Requesters, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited April 14, 2024).

189.    The Data Breach was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiffs' and Class Members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law, including: (a) Zeroed-In's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII to protect against reasonably foreseeable threats to the security or integrity of such information; and (b) Dollar Tree's failure to verify that Zeroed-In, Dollar Tree's third-party vendor for data analytics services, had imposed reasonable security measures.

**ANSWER:    Denied.**

190.    Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, they would have prevented intrusion into its information storage and security systems and, ultimately, the theft of the PII of nearly 2 million individuals.

**ANSWER:    Denied.**

191.    As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class Members have already been harmed by the fraudulent misuse of their PII, and have been placed at an imminent, immediate, and continuing increased risk of additional harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing

and monitoring their credit reports and accounts for unauthorized activity, sorting through dozens of phishing and spam email, text, and phone communications, and filing police reports. This time has been lost forever and cannot be recaptured.

**ANSWER:    Denied.**

192. Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.  theft and misuse of their personal and financial information;

    b.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and misused via the sale of Plaintiffs' and Class Members' information on the Internet's black market;

    c.  the untimely and inadequate notification of the Data Breach;

    d.  the improper disclosure of their PII;

    e.  loss of privacy;

    f.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

    g.  ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market; and,

    h.  the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data

Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

**ANSWER:    Zeroed-In denies each and every allegation in paragraph 192 of the Complaint, including subparagraphs (a) through (h) inclusive.**

193.    While Plaintiffs' and Class Members' PII has been stolen, Defendant Zeroed-In continues to hold Plaintiffs' and Class Members' PII. Particularly because Defendants have demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiffs and Class Members have an undeniable interest in ensuring that their PII is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

**ANSWER:    Denied.**

## PLAINTIFFS' INDIVIDUAL EXPERIENCES

### *Plaintiff Hollynn Adkisson's Experience*

194.    Plaintiff Adkisson values her privacy and makes every effort to keep her personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 194 of the Complaint, and accordingly, those allegations are hereby denied.**

195.    Plaintiff Adkisson only allowed Defendants to maintain, store, and her Private Information because she believed Defendants would use basic security measures to protect her

Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 195 of the Complaint, and accordingly, those allegations are hereby denied.**

196.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff suffered injury from a loss of privacy.

> **ANSWER:**    **Denied.**

197.    Plaintiff Adkisson has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Adkisson entrusted to Defendants. This information has inherent value that Plaintiff Adkisson was deprived of when her Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals.

> **ANSWER:**    **Denied.**

198.    Plaintiff Adkisson's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft when unauthorized third-party criminals orchestrated a tax relief scam and stole $295 from Plaintiff Adkisson's checking account. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Adkisson's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

> **ANSWER:**    **Denied.**

199.    Furthermore, Plaintiff Adkisson has experienced suspicious activity on her credit report which lists an unknown 2018 Nissan Altima. She also experienced suspicious activity on

her credit card, which required her to be issued a new credit card. As a result of the Data Breach,

Plaintiff Adkisson pays $4.95 per month to keep her new credit card locked.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 199 of the Complaint, and accordingly, those allegations are hereby denied.**

200.    The Data Breach has also caused Plaintiff Adkisson to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

> **ANSWER:**    **Denied.**

201.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Adkisson has spent over 25 hours addressing the fraud and identity theft she suffered.

> **ANSWER:**    **Denied.**

202.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Adkisson to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

> **ANSWER:**    **Denied.**

203.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Adkisson to suffer stress, fear, and anxiety.

**ANSWER:**    **Denied.**

204.    Plaintiff Adkisson has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 204 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Yolanda Alvarado's Experience*

205.    Plaintiff Alvarado values her privacy and makes every effort to keep her personal information private.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 205 of the Complaint, and accordingly, those allegations are hereby denied.**

206.    Plaintiff Alvarado only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 206 of the Complaint, and accordingly, those allegations are hereby denied.**

207.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Alvarado suffered injury from a loss of privacy.

**ANSWER:    Denied.**

208.    Plaintiff Alvarado has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Alvarado entrusted to Defendants. This information has inherent value that Plaintiff Alvarado was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

209.    Plaintiff Alvarado's Private Information has been unlawfully accessed and exploited, leading to instances of fraud. One such incident involved an unknown third party stealing her payroll debit card, prompting Cash App to cancel it and issue a new account. These illicit actions by unknown perpetrators have severely disrupted Plaintiff Alvarado's life, resulting in hardships directly linked to the Data Breach. Moreover, following the Data Breach, Experian informed Plaintiff Alvarado that her Private Information had been found on the dark web.

**ANSWER:    Denied.**

210.    Furthermore, Plaintiff has experienced a dramatic increase in spam calls and emails as a result of the Data Breach.

**ANSWER:    Denied.**

211.    The Data Breach has also caused Plaintiff Alvarado to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

212.    In addition to the increased risk and the actual harm suffered by Plaintiff Alvarado, the Data Breach has caused her to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

213.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Alvarado to suffer stress, fear, and severe anxiety.

**ANSWER:    Denied.**

214.    Plaintiff Alvarado has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 214 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Fareeka Barnett's Experience*

215.    Plaintiff Barnett values her privacy and makes every effort to keep her personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 215 of the Complaint, and accordingly, those allegations are hereby denied.**

216.    Plaintiff Barnett only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 216 of the Complaint, and accordingly, those allegations are hereby denied.**

217.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Barnett suffered injury from a loss of privacy.

**ANSWER:    Denied.**

218.    Plaintiff Barnett has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Barnett entrusted to Defendants. This information has inherent value that Plaintiff Barnett was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

219.    Plaintiff Barnett's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far. Experian has confirmed that Plaintiff Barnett's Social Security number is available on the Dark Web, and that her Social Security number has been found in association with an unknown Texas address. Plaintiff Barnett has never lived in Texas. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Barnett's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

220.    Furthermore, Plaintiff Barnett has experienced a significant increase in spam calls, emails, and text messages as a result of the Data Breach, including spam emails purportedly from Chase Bank and JG Wentworth.

**ANSWER:    Denied.**

221.    The Data Breach has also caused Plaintiff Barnett to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

222.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Barnett has spent hours researching the Data Breach, researching credit monitoring, enrolling in credit monitoring, and freezing her credit reports.

**ANSWER:    Denied.**

223.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Barnett to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

224.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Barnett to suffer stress, fear, and anxiety regarding the future misuse of Plaintiff Barnett's Private Information.

**ANSWER:    Denied.**

225.    Plaintiff Barnett has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 225 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### _Plaintiff Melody T. Brantley's Experience_

226.    Plaintiff Brantley values her privacy and makes every effort to keep her personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph**

**226 of the Complaint, and accordingly, those allegations are hereby denied.**

227.    Plaintiff Brantley only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 227 of the Complaint, and accordingly, those allegations are hereby denied.**

228.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Brantley suffered injury from a loss of privacy.

**ANSWER:    Denied.**

229.    Plaintiff Brantley has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Brantley was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

230.    After learning of the Data Breach, and out of concern for her identity, Plaintiff Brantley established a credit monitoring account through Equifax on or about December 5, 2023.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 230 of the Complaint, and accordingly, those allegations are hereby**

**denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

231.    On or about December 10, 2023, Plaintiff Brantley purchased credit monitoring through Incogni and Experian, costing Plaintiff Brantley approximately $12.99 per month.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 231 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

232.    Following the Data Breach, Plaintiff Brantley has already been the victim of identity theft. Upon information and belief, Plaintiff received a notice from an unknown individual by phone, mail, or text about an "account inquiry."

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 232 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

233.    Plaintiff Brantley has also received information that, following the Data Breach, her Private Information was posted on the dark web. Plaintiff Brantley subsequently took steps to obtain a credit freeze as a result of learning this information.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 233 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

234.    Since the Data Breach, Plaintiff Brantley has experienced a significant increase in the frequency of spam telephone calls and emails from individuals who have clearly obtained her Private Information.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 234 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

235.    Plaintiff Brantley is now forced to live with the anxiety that her Private Information is being disclosed to the entire world, thereby subjecting her to embarrassment and depriving her of any right to privacy whatsoever.

**ANSWER:    Denied.**

236.    As a result of the Data Breach, Plaintiff Brantley has had to spend over 25 hours dealing with the consequences of the Data Breach. This time and effort spent by Plaintiff Brantley consists of: monitoring her accounts to detect suspicious and fraudulent activity to mitigate against potential harm; researching the potential consequences of the Data Breach; locking her credit account with Experian, TransUnion, and Equifax after finding out that her Private Information was detected on the dark web; and going to and consulting with her bank about the Data Breach, potential data theft, and precautions to be taken.

**ANSWER:    Denied.**

237.    Plaintiff Brantley remains at a substantial and imminent risk of future harm given the highly sensitive nature of the information stolen. Plaintiff Brantley faces a substantial risk of

out-of-pocket fraud losses, such as loans opened in her name, medical services billed in her name, tax return fraud, utility bills opened in her name, credit card fraud, and similar identity theft.

**ANSWER:     Denied.**

238.     Plaintiff Brantley has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

> **ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 238 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Danielle Cooke's Experience*

239.     Plaintiff Cooke values her privacy and makes every effort to keep her personal information private.

> **ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 239 of the Complaint, and accordingly, those allegations are hereby denied.**

240.     Plaintiff Cooke only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph**

**240 of the Complaint, and accordingly, those allegations are hereby denied.**

241.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Cooke suffered injury from a loss of privacy.

**ANSWER:    Denied.**

242.    Plaintiff Cooke has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Cooke entrusted to Defendants. This information has inherent value that Plaintiff Cooke was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

243.    Plaintiff Cooke's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far. On September 8, 2023, an unknown person, using Plaintiff's Social Security number, opened a bank account under her name and personal information. Plaintiff Cooke received a letter from the bank in October 2023 informing her that she had insufficient funds in the fraudulent account. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Cooke's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

244.    Furthermore, Plaintiff Cooke has experienced a significant increase in spam calls, emails, and text messages as a result of the Data Breach. Plaintiff Cooke receives about 5-6 spam text messages each day.

**ANSWER:**    **Denied.**

245.    The Data Breach has also caused Plaintiff Cooke to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:**    **Denied.**

246.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Cooke has had to purchase Life Lock at $239.88 per year. She has also had to spend time remediating the fraudulent bank account, closing it, checking her other accounts, and freezing her credit. Overall, Plaintiff Cooke has spent over 40 hours responding to the Data Breach.

**ANSWER:**    **Denied.**

247.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Cooke to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:**    **Denied.**

248.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Cooke to suffer stress, fear, and anxiety.

**ANSWER:**    **Denied.**

249.    Plaintiff Cooke has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 249 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### Plaintiff Felizitas Cox's Experience

250.    Plaintiff Cox values her privacy and makes every effort to keep her personal information private.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 250 of the Complaint, and accordingly, those allegations are hereby denied.**

251.    Plaintiff Cox only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 251 of the Complaint, and accordingly, those allegations are hereby denied.**

252.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Cox suffered injury from a loss of privacy.

**ANSWER:    Denied.**

253.    Plaintiff Cox has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Cox entrusted to Defendants. This information has inherent value that Plaintiff Cox was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

254.    Plaintiff Cox's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far in the form of attempts to fraudulently withdraw funds from her bank account in February and March 2024. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Cox's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

255.    Furthermore, Plaintiff Cox has experienced a significant increase in spam calls and phishing attempts and her bank account has been targeted by attempted fraudulent transactions as a result of the Data Breach.

**ANSWER:    Denied.**

256.    The Data Breach has also caused Plaintiff Cox to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

257.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Cox has had to spend significant time monitoring her accounts every day and has additional expenses including but not limited to lost time, credit monitoring subscriptions, difficulty accessing bank assets and associated delays, and more.

**ANSWER:    Denied.**

258.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Cox to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

259.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Cox to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

260.    Plaintiff Cox has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 260 of the Complaint, and accordingly, those allegations are hereby**

denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.

### *Plaintiff Melissa Deshon's Experience*

261.    Plaintiff Deshon values her privacy and makes every effort to keep her personal information private.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 261 of the Complaint, and accordingly, those allegations are hereby denied.**

262.    Plaintiff Deshon only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 262 of the Complaint, and accordingly, those allegations are hereby denied.**

263.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Deshon suffered injury from a loss of privacy.

> **ANSWER:**    **Denied.**

264.    Plaintiff Deshon has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Deshon entrusted to Defendants. This information has inherent value that Plaintiff Deshon was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

265.    Furthermore, Plaintiff Deshon has experienced spam calls, texts, and mail as a result of the Data Breach.

**ANSWER:    Denied.**

266.    The Data Breach has also caused Plaintiff Deshon to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

267.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Deshon has spent two hours a day following the Data Breach monitoring her accounts and dealing with spam calls and text messages.

**ANSWER:    Denied.**

268.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Deshon to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

269.    The present and substantial risk of imminent harm and loss of privacy have both caused Plaintiff Deshon to suffer stress, fear, and anxiety.

**ANSWER:**    **Denied.**

270.    Plaintiff Deshon has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 270 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law**

### *Plaintiff Cedric Eady's Experience*

271.    Plaintiff Eady values his privacy and makes every effort to keep his personal information private.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 271 of the Complaint, and accordingly, those allegations are hereby denied.**

272.    Plaintiff Eady only allowed Defendants to maintain, store, and use his Private Information because he believed Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 272 of the Complaint, and accordingly, those allegations are hereby denied.**

273.    In the instant that his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff Eady suffered injury from a loss of privacy.

**ANSWER:**    **Denied.**

274.    Plaintiff Eady has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff Eady entrusted to Defendants. This information has inherent value that Plaintiff Eady was deprived of when his Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:**    **Denied.**

275.    Plaintiff Eady's Private Information has already been stolen and misused as he has experienced incidents of fraud and identity theft so far. After the Data Breach, Plaintiff Eady received calls from a local hospital, claiming that he owed the hospital money for an unpaid debt. Plaintiff Eady never actually incurred this debt. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Eady's life as a whole, and specifically caused financial strain on him as a direct result of the Data Breach.

**ANSWER:**    **Denied.**

276.    As a result of the Data Breach, Plaintiff Eady has spent time replacing his credit cards to avoid fraudulent misuse.

**ANSWER:**    **Denied.**

277.    Furthermore, Plaintiff Eady has experienced a significant increase in spam calls, emails, and text messages as a result of the Data Breach.

**ANSWER:**    **Denied.**

278.    The Data Breach has also caused Plaintiff Eady to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

**ANSWER:**    **Denied.**

279.    As a result of the actual harm he has suffered and the present and increased imminent risk of future harm, Plaintiff Eady has spent approximately 12 days researching the Data Breach, researching credit monitoring, enrolling in credit monitoring, reviewing his credit reports, reviewing his account statements, and overall responding to the Data Breach.

**ANSWER:**    **Denied.**

280.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Eady to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:**    **Denied.**

281.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Eady to suffer stress, fear, and anxiety.

**ANSWER:**    **Denied.**

282.    Plaintiff Eady has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 282 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Dylan Garcia's Experience*

283.    Plaintiff Dylan Garcia values his privacy and makes every effort to keep his personal information private.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 283 of the Complaint, and accordingly, those allegations are hereby denied.**

284.    Plaintiff Dylan Garcia only allowed Defendants to maintain, store, and use his Private Information because he believed Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 284 of the Complaint, and accordingly, those allegations are hereby denied.**

285.    In the instant that his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff Dylan Garcia suffered injury from a loss of privacy.

**ANSWER:**    **Denied.**

286.    Plaintiff Dylan Garcia has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff Dylan Garcia entrusted to Defendants. This information has inherent value that Plaintiff Dylan Garcia was deprived of when his Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:**    **Denied.**

287.    The Data Breach has also caused Plaintiff Dylan Garcia to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

**ANSWER:**    **Denied.**

288.    As a result of the actual harm he has suffered and the present and increased imminent risk of future harm, Plaintiff Dylan Garcia has spent considerable time researching credit monitoring services and researching the Data Breach so that he can understand the risks and protect against them.

**ANSWER:**    **Denied.**

289.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Dylan Garcia to suffer stress, fear, and anxiety.

**ANSWER:**    **Denied.**

290.    Plaintiff Dylan Garcia has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 290 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Solimar Garcia's Experience*

291.    Plaintiff Solimar Garcia values her privacy and makes every effort to keep her personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 291 of the Complaint, and accordingly, those allegations are hereby denied.**

292.    Plaintiff Solimar Garcia only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 292 of the Complaint, and accordingly, those allegations are hereby denied.**

293.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Solimar Garcia suffered injury from a loss of privacy.

**ANSWER:    Denied.**

294.    Plaintiff Solimar Garcia has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Solimar Garcia entrusted to Defendants. This information has inherent value that Plaintiff Solimar Garcia was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

295.    Plaintiff Solimar Garcia's Private Information has already been stolen and misused. She has experienced incidents of fraud and identity theft in the form of multiple unauthorized charges and attempted charges to her bank account. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Solimar Garcia's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

296.    Furthermore, Plaintiff Solimar Garcia has experienced an influx of spam calls as a result of the Data Breach.

**ANSWER:    Denied.**

297.    The Data Breach has also caused Plaintiff Solimar Garcia to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

298.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Solimar Garcia had to contact her bank to replace her bank cards, was locked out of online banking due to the multiple attempts to withdraw money by an unauthorized party, and now monitors her accounts and credit every week.

**ANSWER:    Denied.**

299.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Solimar Garcia to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction. The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Solimar Garcia to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

300.    Plaintiff Solimar Garcia has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 300 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Dominick Garland's Experience*

301.    Plaintiff Garland values his privacy and makes every effort to keep his personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 301 of the Complaint, and accordingly, those allegations are hereby denied.**

302.    Plaintiff Garland only allowed Defendants to maintain, store, and use his Private Information because he believed Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 302 of the Complaint, and accordingly, those allegations are hereby denied.**

303.    In the instant that his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff Garland suffered injury from a loss of privacy.

**ANSWER:    Denied.**

304.    Since the Data Breach, Plaintiff Garland has already been the victim of identity theft.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 304 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

305.    Plaintiff Garland's CashApp account was used by an unknown and unauthorized individual to make two separate charges of $50.00. Plaintiff Garland did not make or authorize these charges.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 305 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

306.    As a result of the fraudulent charges to his CashApp described above, Plaintiff Garland was forced to spend approximately four (4) hours cancelling his existing CashApp account and opening a new account.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 306 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

307.    Since the Data Breach, Plaintiff Garland has experienced a significant increase in the frequency of spam telephone calls and emails from individuals who have clearly obtained his Private Information.

**ANSWER:    Denied.**

308.    Plaintiff Garland has also received various strange e-mail messages since the Data Breach from unknown individuals asking him to participate in contests.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 308 of the Complaint, and accordingly, those allegations are hereby**

> **denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

309.    Plaintiff Garland faces a substantial risk of being targeted in the future for phishing, data intrusion, and other illegal schemes based on his Private Information, as potential fraudsters will use exposed information to target him more effectively.

**ANSWER:    Denied.**

310.    Plaintiff Garland is now forced to live with the anxiety that his Private Information may be disclosed to the entire world, thereby subjecting him to embarrassment and depriving him of any right to privacy whatsoever.

**ANSWER:    Denied.**

311.    As a result of the Data Breach, Plaintiff Garland has had to spend approximately seven days dealing with the consequences of the Data Breach. This time and effort spent by Plaintiff Garland consists of: monitoring his accounts to detect suspicious and fraudulent activity to mitigate against potential harm; researching the potential consequences of the Data Breach; resolving the fraudulent charges on his CashApp account; canceling his CashApp account and creating a new one; and going to and consulting his bank about the Data Breach, and potential data theft and precautions to be taken.

**ANSWER:    Denied.**

### Plaintiff Paula Hasenei's Experience

312.    Plaintiff Hasenei values her privacy and makes every effort to keep her personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph**

**312 of the Complaint, and accordingly, those allegations are hereby denied.**

313.    Plaintiff Hasenei only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 313 of the Complaint, and accordingly, those allegations are hereby denied.**

314.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Hasenei suffered injury from a loss of privacy.

**ANSWER:    Denied.**

315.    Plaintiff Hasenei has been further injured by the damages to and diminution in value of her Private Information —a form of intangible property that Plaintiff Hasenei entrusted to Defendants. This information has inherent value that Plaintiff Hasenei was deprived of when her Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals.

**ANSWER:    Denied.**

316.    Plaintiff Hasenei's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far in the form of a fraud alert from her bank on November 25, 2023 about a $39.99 credit charge she did not make.

**ANSWER:    Denied.**

317.    The Data Breach has also caused Plaintiff Hasenei to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

318.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Hasenei to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

319.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Hasenei to suffer stress, fear of damage to her credit rating, and anxiety.

**ANSWER:    Denied.**

320.    Plaintiff Hasenei has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 320 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### _Plaintiff Christopher Ingram's Experience_

321.   Plaintiff Ingram values his privacy and makes every effort to keep his personal information private.

**ANSWER:**   **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 321 of the Complaint, and accordingly, those allegations are hereby denied.**

322.   Plaintiff Ingram only allowed Defendants to maintain, store, and use his Private Information because he believed that Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

**ANSWER:**   **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 322 of the Complaint, and accordingly, those allegations are hereby denied.**

323.   In the instant that his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff Ingram suffered injury from a loss of privacy.

**ANSWER:**   **Denied.**

324.   Plaintiff Ingram has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff Ingram entrusted to Defendants. This information has inherent value that Plaintiff Ingram was deprived of when his Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:**   **Denied.**

325.    Plaintiff Ingram's Private Information has already been stolen and misused as he has experienced incidents of fraud and identity theft. Plaintiff Ingram received suspicious emails in or around October or November 2023 informing him that his Private Information was being utilized in fraudulent loan applications. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Ingram's life as a whole, and specifically caused financial strain on him as a direct result of the Data Breach.

**ANSWER:    Denied.**

326.    Furthermore, Plaintiff Ingram has also received notifications that his personal information has been found on the dark web as a result of the Data Breach.

**ANSWER:    Denied.**

327.    The Data Breach has also caused Plaintiff Ingram to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

328.    As a result of the actual harm he has suffered and the present and increased imminent risk of future harm, Plaintiff Ingram has spent 10 hours monitoring and reviewing his financial accounts and credit report.

**ANSWER:    Denied.**

329.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff to spend significant time dealing with issues related to the Data Breach, which

includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

330.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

331.    Plaintiff Ingram has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 331 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### ***Plaintiff Ashley Jacobson's Experience***

332.    Plaintiff Jacobson values her privacy and makes every effort to keep her personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 332 of the Complaint, and accordingly, those allegations are hereby denied.**

333.    Plaintiff Jacobson only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her

Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 333 of the Complaint, and accordingly, those allegations are hereby denied.**

334.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Jacobson suffered injury from a loss of privacy.

> **ANSWER:    Denied.**

335.    Plaintiff Jacobson has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Jacobson entrusted to Defendants. This information has inherent value that Plaintiff Jacobson was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

> **ANSWER:    Denied.**

336.    The Data Breach has also caused Plaintiff Jacobson to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

> **ANSWER:    Denied.**

337.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Jacobson has spent approximately three (3) hours researching the Data Breach, reviewing her credit reports, and reviewing her account statements.

**ANSWER:**    **Denied.**

338.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Jacobson to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:**    **Denied.**

339.    The present and substantial risk of imminent harm and loss of privacy have both caused Plaintiff Jacobson to suffer stress, fear, and anxiety.

**ANSWER:**    **Denied.**

340.    Plaintiff Jacobson has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 340 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### _Plaintiff Barry Jeffries's Experience_

341.   Plaintiff Jeffries values his privacy and makes every effort to keep his personal information private.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 341 of the Complaint, and accordingly, those allegations are hereby denied.**

342.   Plaintiff Jeffries only allowed Defendants to maintain, store, and use his Private Information because he believed Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 342 of the Complaint, and accordingly, those allegations are hereby denied.**

343.   In the instant his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff Jeffries suffered injury from a loss of privacy.

> **ANSWER:**    **Denied.**

344.   Plaintiff Jeffries has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff Jeffries entrusted to Defendants. This information has inherent value that Plaintiff Jeffries was deprived of when his Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals.

> **ANSWER:**    **Denied.**

345.    Plaintiff Jeffries's Private Information has already been stolen and misused after it was compromised in the Data Breach. In September 2023, Plaintiff Jeffries received an alert that an unauthorized individual attempted to use his Private Information to apply for a credit card in his name.

**ANSWER:    Denied.**

346.    Furthermore, Plaintiff Jeffries has experienced an increased number of spam emails and spam phone calls as a result of the Data Breach. Plaintiff Jeffries noticed such a drastic increase in the amount of spam calls following the Data Breach that he was forced to change his cellphone number.

**ANSWER:    Denied.**

347.    The Data Breach has also caused Plaintiff Jeffries to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse of his Private Information, which is now in the hands of criminals.

**ANSWER:    Denied.**

348.    As a result of the actual harm he has suffered and the present and increased imminent risk of future harm, Plaintiff Jeffries has been forced to spend his valuable time and efforts monitoring his credit card statements and bank account statements to prevent future misuse of his Private Information.

**ANSWER:    Denied.**

349.   In addition to the increased risk and actual harm suffered by Plaintiff Jeffries, the Data Breach has caused Plaintiff Jeffries to spend significant time attempting to mitigate the impact of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring his accounts to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

350.   The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Jeffries to suffer stress, fear, and anxiety about future misuse of his Private Information.

**ANSWER:    Denied.**

351.   Plaintiff Jeffries has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 351 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### _Plaintiff Lacy Matczak's Experience_

352.   Plaintiff Matczak values her privacy and makes every effort to keep her personal information private.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 352 of the Complaint, and accordingly, those allegations are hereby denied.**

353.    Plaintiff Matczak only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

      **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 353 of the Complaint, and accordingly, those allegations are hereby denied.**

354.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Matczak suffered injury from a loss of privacy.

      **ANSWER:**    **Denied.**

355.    Plaintiff Matczak has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Matczak entrusted to Defendants. This information has inherent value that Plaintiff Matczak was deprived of when her Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals.

      **ANSWER:**    **Denied.**

356.    Furthermore, Plaintiff Matczak has experienced increases in spam calls and texts, including spam calls addressing her by name, as a result of the Data Breach.

      **ANSWER:**    **Denied.**

357.    The Data Breach has also caused Plaintiff Matczak to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

358.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Matczak has suffered harm including lost time spent researching the data breach and monitoring her credit and bank accounts.

**ANSWER:    Denied.**

359.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Matczak to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

360.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Matczak to suffer stress, fear, and anxiety, including concerns about whether this Data Breach might impact her children.

**ANSWER:    Denied.**

361.    Plaintiff Matczak has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 361 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Lashawn McDaniel's Experience*

362.    Plaintiff McDaniel values his privacy and makes every effort to keep his personal information private.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 362 of the Complaint, and accordingly, those allegations are hereby denied.**

363.    Plaintiff McDaniel only allowed Defendants to maintain, store, and use his Private Information because he believed Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 363 of the Complaint, and accordingly, those allegations are hereby denied.**

364.    In the instant that his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff McDaniel suffered injury from a loss of privacy.

**ANSWER:    Denied.**

365.    Plaintiff McDaniel has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff McDaniel entrusted to Defendants. This information has inherent value that Plaintiff McDaniel was deprived of when his Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

366.    Furthermore, Plaintiff McDaniel has experienced an increase in spam calls, texts, and/or emails as a result of the Data Breach.

**ANSWER:    Denied.**

367.    The Data Breach has also caused Plaintiff McDaniel to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

368.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff McDaniel to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

369.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff McDaniel to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

370.    Plaintiff McDaniel has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 370 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Edward McNanna's Experience*

371.    Plaintiff Edward McNanna values his privacy and makes every effort to keep his personal information private.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 371 of the Complaint, and accordingly, those allegations are hereby denied.**

372.    Plaintiff McNanna only allowed Defendants to maintain, store, and use his Private Information because he believed Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 372 of the Complaint, and accordingly, those allegations are hereby denied.**

373.    In the instant that his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff McNanna suffered injury from a loss of privacy.

**ANSWER:    Denied.**

374.    Plaintiff McNanna has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff McNanna entrusted to Defendants. This information has inherent value that Plaintiff McNanna was deprived of when his Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

375.    Plaintiff McNanna's Private Information has already been stolen and misused as he has experienced incidents of fraud and identity theft so far in the form of a CashApp alert in December 2023 that a fraudster was trying to take money from his bank account using another CashApp account. Plaintiff McNanna was forced to call his bank and report the fraudulent activity, which is now noted on his account.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 375 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

376.    Furthermore, Plaintiff McNanna has experienced a huge increase spam calls and texts and phishing emails, as a result of the Data Breach.

**ANSWER:**    **Denied.**

377.    The Data Breach has also caused Plaintiff McNanna to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

**ANSWER:**    **Denied.**

378.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:**    **Denied.**

379.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff McNanna to suffer stress, fear, and anxiety.

**ANSWER:**    **Denied.**

380.    Plaintiff McNanna has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:**    **Denied.**

### ***Plaintiff Jack Meyer's Experience***

381.    Plaintiff Meyer's values his privacy and makes every effort to keep his personal information private.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 381 of the Complaint, and accordingly, those allegations are hereby denied.**

382.    Plaintiff Meyers only allowed Defendants to maintain, store, and use his Private Information because he believed Defendants would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 382 of the Complaint, and accordingly, those allegations are hereby denied.**

383.    In the instant that his Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff Meyers suffered injury from a loss of privacy.

**ANSWER:**    **Denied.**

384.    Plaintiff Meyers has been further injured by the damages to and diminution in value of his Private Information—a form of intangible property that Plaintiff Meyers entrusted to Defendants. This information has inherent value that Plaintiff Meyers was deprived of when his Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:**    **Denied.**

385.    Furthermore, Plaintiff Meyers has experienced a significant increase in spam calls, emails, and text messages as a result of the Data Breach. This increase in spam was especially notable in the first few months following the Data Breach wherein Plaintiff Meyers received approximately 30 to 50 spam calls per day.

**ANSWER:**    **Denied.**

386.    The Data Breach has also caused Plaintiff Meyers to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

**ANSWER:**    **Denied.**

387.    As a result of the actual harm he has suffered and the present and increased imminent risk of future harm, Plaintiff Meyers has spent approximately 15 to 20 hours per month for the past 14 months researching the Data Breach, researching credit monitoring, enrolling in credit monitoring, reviewing his credit reports, reviewing his account statements, and overall responding to the Data Breach.

**ANSWER:**    **Denied.**

388.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Meyers to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

389.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Meyers to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

390.    Plaintiff Meyers has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 390 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Brittany Mintz's Experience*

391.    Plaintiff Mintz values her privacy and makes every effort to keep her personal information private.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 391 of the Complaint, and accordingly, those allegations are hereby denied.**

392.    Plaintiff Mintz only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph**

**392 of the Complaint, and accordingly, those allegations are hereby denied.**

393.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Mintz suffered injury from a loss of privacy.

**ANSWER:    Denied.**

394.    Plaintiff Mintz has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Mintz entrusted to Defendants. This information has inherent value that Plaintiff Mintz was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

395.    Plaintiff Mintz's Private Information has already been stolen and misused following the Data Breach. She has experienced incidents of fraud and identity theft so far in the form of unauthorized charges totaling $617.00 and multiple attempted unauthorized charges of large sums of money to her bank accounts. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

396.    Furthermore, Plaintiff Mintz has experienced multiple spam calls, emails, and texts as a result of the Data Breach.

**ANSWER:    Denied**

397.    The Data Breach has also caused Plaintiff Mintz to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

398.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Mintz had to replace her bank cards, reset automatic billing instructions to nine accounts over the course of two days, and monitor her financial accounts for at least 15 minutes every day.

**ANSWER:    Denied.**

399.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Mintz to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

400.    The present and substantial risk of imminent harm and loss of privacy have both caused Plaintiff Mintz to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

401.    Plaintiff Mintz has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 401 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Christian Moss's Experience*

402.    Plaintiff Moss values her privacy and makes every effort to keep her personal information private.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 402 of the Complaint, and accordingly, those allegations are hereby denied.**

403.    Plaintiff Moss only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 403 of the Complaint, and accordingly, those allegations are hereby denied.**

404.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Moss suffered injury from a loss of privacy.

**ANSWER:**    **Denied.**

405.    Plaintiff Moss has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Moss entrusted to Defendants. This information has inherent value that Plaintiff Moss was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

406.    Plaintiff Moss's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far in the form of several unauthorized charges on two different debit cards, some of which have not been reimbursed by her bank. Plaintiff Moss also now has a fraud alert on her credit report which caused her difficulty in obtaining a car loan. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Moss's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

407.    Furthermore, Plaintiff Moss has experienced an increase in spam texts and emails as a result of the Data Breach.

**ANSWER:    Denied.**

408.    The Data Breach has also caused Plaintiff Moss to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

409.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Moss has spent time dealing with the consequences of the Data breach such as the fraudulent charges to her bank account.

**ANSWER:**    **Denied.**

410.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Moss to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, including by calling Zeroed-In. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:**    **Denied.**

411.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Moss to suffer stress, fear, and anxiety. Plaintiff Moss is worried about her credit and her Private Information being in the public domain and available to identity thieves.

**ANSWER:**    **Denied.**

412.    Plaintiff Moss has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 412 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### *Plaintiff Rosie Player's Experience*

413.   Plaintiff Player values her privacy and makes every effort to keep her personal information private.

> **ANSWER:**   **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 413 of the Complaint, and accordingly, those allegations are hereby denied.**

414.   Plaintiff Player only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:**   **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 414 of the Complaint, and accordingly, those allegations are hereby denied.**

415.   In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Player suffered injury from a loss of privacy.

> **ANSWER:**   **Denied.**

416.   Plaintiff Player has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Player entrusted to Defendants. This information has inherent value that Plaintiff Player was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

> **ANSWER:**   **Denied.**

417.    Plaintiff Player's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far in the form of fraudulent withdrawals and transactions from her checking account. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Player's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

418.    Following the Data Breach, on September 21, 2023, Plaintiff Player received a notice that her Social Security number was found published on the dark web.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 418 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

419.    Furthermore, Plaintiff Player has experienced an increase in spam texts, calls, and mail as a result of the Data Breach, related to loans and accounts that she did not sign up for.

**ANSWER:    Denied.**

420.    The Data Breach has also caused Plaintiff Player to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

421.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Player has spent two hours a day following the Data Breach responding to the fraudulent withdrawals on her checking account, and the spam texts and calls.

**ANSWER:    Denied.**

422.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Player to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:    Denied.**

423.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Player to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

424.    Plaintiff Player has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 424 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### _Plaintiff Alyssa Rivera's Experience_

425.   Plaintiff Alyssa Rivera values her privacy and makes every effort to keep her personal information private.

**ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 425 of the Complaint, and accordingly, those allegations are hereby denied.**

426.   Plaintiff Alyssa Rivera only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

**ANSWER:     Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 426 of the Complaint, and accordingly, those allegations are hereby denied.**

427.   In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Alyssa Rivera suffered injury from a loss of privacy.

**ANSWER:     Denied.**

428.   Plaintiff Alyssa Rivera has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff entrusted to Defendants. This information has inherent value that Plaintiff Alyssa Rivera was deprived of when her Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals.

**ANSWER:**    **Denied.**

429.    Plaintiff Alyssa Rivera's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far in the form of receiving two credit cards in the mail that she did not apply for. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Alyssa Rivera's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

**ANSWER:**    **Denied.**

430.    Furthermore, Plaintiff Alyssa Rivera has experienced an increase in spam calls, text messages, and emails as a result of the Data Breach.

**ANSWER:**    **Denied.**

431.    The Data Breach has also caused Plaintiff Alyssa Rivera to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:**    **Denied.**

432.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Alyssa Rivera has spent time changing her passwords, researching the details of the data breach, and checking her financial accounts.

**ANSWER:**    **Denied.**

433.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Alyssa Rivera to spend significant time dealing with issues related to the Data

Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:** **Denied.**

434.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Alyssa Rivera to suffer stress, fear, and anxiety. Plaintiff Alyssa Rivera fears that her information is on the dark web and is concerned about her ability to build credit in the future. Plaintiff Alyssa Rivera has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

**ANSWER:** **Denied.**

### *Plaintiff Cynthia Rivera's Experience*

435.    Plaintiff Cynthia Rivera values her privacy and makes every effort to keep her personal information private.

**ANSWER:** **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 435 of the Complaint, and accordingly, those allegations are hereby denied.**

436.    Plaintiff Cynthia Rivera only allowed Defendants to maintain, store, and use her Private Information because she believed that Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:**    **Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 436 of the Complaint, and accordingly, those allegations are hereby denied.**

437.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Cynthia Rivera suffered injury from a loss of privacy.

> **ANSWER:**    **Denied.**

438.    Plaintiff Cynthia Rivera has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Cynthia Rivera entrusted to Defendants. This information has inherent value that Plaintiff Cynthia Rivera was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

> **ANSWER:**    **Denied.**

439.    Plaintiff Cynthia Rivera's Private Information has already been stolen and misused as she has experienced incidents of fraud and identity theft so far in the form of an unauthorized actor fraudulently using her Social Security number in another state. As a result, Plaintiff Cynthia Rivera has experienced denial of unemployment benefits because her Social Security number was already being used. These actions by unauthorized criminal third parties have detrimentally impacted Plaintiff Cynthia Rivera's life as a whole, and specifically caused financial strain on her as a direct result of the Data Breach.

> **ANSWER:**    **Denied.**

440.    Furthermore, Plaintiff Cynthia Rivera has experienced a substantial increase in suspicious emails and text messages to her cell phone as a result of the Data Breach.

**ANSWER:**    **Denied.**

441.    The Data Breach has also caused Plaintiff Cynthia Rivera to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:**    **Denied.**

442.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Cynthia Rivera has spent countless hours monitoring her credit, reviewing financial accounts, enrolling in credit monitoring, and placing a lock on her credit.

**ANSWER:**    **Denied.**

443.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Cynthia Rivera to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:**    **Denied.**

444.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Cynthia Rivera to suffer stress, fear, and anxiety.

**ANSWER:    Denied.**

445.    Plaintiff Cynthia Rivera has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 445 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

### ***Plaintiff Brandy Sinnett's Experience***

446.    Plaintiff Sinnett values her privacy and makes every effort to keep her personal information private.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 446 of the Complaint, and accordingly, those allegations are hereby denied.**

447.    Plaintiff Sinnett only allowed Defendants to maintain, store, and use her Private Information because she believed Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing her Private Information.

> **ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 447 of the Complaint, and accordingly, those allegations are hereby denied.**

448.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Sinnett suffered injury from a loss of privacy.

**ANSWER:    Denied.**

449.    Plaintiff Sinnett has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that Plaintiff Sinnett entrusted to Defendants. This information has inherent value that Plaintiff Sinnett was deprived of when her Private Information was placed on a publicly accessible database and exfiltrated by cybercriminals.

**ANSWER:    Denied.**

450.    Plaintiff Sinnett's Private Information has already been stolen and likely misused as she was alerted on or around October 17, 2023 that her Social Security Number was found on the dark web. Plaintiff Sinnett received this notification through her credit card provider. These actions by unauthorized criminal third parties who have posted Plaintiff Sinnett's Social Security number to the dark web have detrimentally impacted Plaintiff Sinnett's life as a whole and are likely to cause financial strain on her as a direct result of the Data Breach.

**ANSWER:    Denied.**

451.    Furthermore, Plaintiff Sinnett has experienced an increase in spam phone calls and text messages as a result of the Data Breach.

**ANSWER:    Denied.**

452.    The Data Breach has also caused Plaintiff Sinnett to suffer imminent and impending injury arising from the present and substantially increased risk of future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

**ANSWER:    Denied.**

453.    As a result of the actual harm she has suffered and the present and increased imminent risk of future harm, Plaintiff Sinnett has and will continue to spend time trying to mitigate the consequences of the Data Breach. This includes time spent verifying the legitimacy of incoming spam telephone calls, hours spent tracking her credit information through a credit reporting service on a weekly basis, self-monitoring her credit accounts and history, and money spent buying a monthly subscription to a credit protection service through her credit card account after receiving notice of the Data Breach.

**ANSWER:    Denied.**

454.    In addition to the increased risk and the actual harm suffered, the Data Breach has caused Plaintiff Sinnett to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Data Breach Notice Letter, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER: Denied.**

455.    The present and substantial risk of imminent harm and loss of privacy have caused Plaintiff Sinnett to suffer stress, fear, and anxiety related to the Data Breach. Specifically, Plaintiff Sinnett has long feared that her Private Information would be the subject of a data breach and has spent numerous hours worrying about the effect the Data Breach will have on her life. The stress and anxiety caused by the Data Breach have caused Plaintiff Sinnett to spend hours every week checking and re-checking credit accounts, credit reports, and her banking information. These activities have

reduced Plaintiff Sinnett's enjoyment of life and negatively impacted her free time. This time has been lost forever and cannot be recaptured. The harm caused to Plaintiff Sinnett cannot be undone.

**ANSWER:    Denied.**

456.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**ANSWER:    Zeroed-In is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 456 of the Complaint, and accordingly, those allegations are hereby denied. Zeroed-In further denies that Plaintiffs' allegations establish compensable damages under applicable law.**

**CLASS ALLEGATIONS**

457.    Plaintiffs bring this class action individually on behalf of themselves and on behalf of all members of the following Classes of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) of the following classes:

**Nationwide Class**

All persons residing in the United States whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

**California Class**

All persons residing in the state of California whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

**Florida Class**

All persons residing in the state of Florida whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## Georgia Class

All persons residing in the state of Georgia whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## Illinois Class

All persons residing in the state of Illinois whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## Maryland Class

All persons residing in the state of Maryland whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## Missouri Class

All persons residing in the state of Missouri whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## New York Class

All persons residing in the state of New York whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## South Carolina Class

All persons residing in the state of South Carolina whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## Texas Class

All persons residing in the state of Texas whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

## Virginia Class

All persons residing in the Commonwealth of Virginia whose PII was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

**ANSWER:** **Zeroed-In admits that Plaintiffs have defined proposed classes in paragraph 457 of the Complaint but denies that the classes are certifiable.**

458.    Excluded from the class are Defendants and their affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendants have a controlling interest, as well

as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

>    **ANSWER:**    **Paragraph 458 of the Complaint contains no allegations directed to Zeroed-In and, therefore, no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 458 of the Complaint.**

459.    Plaintiffs reserve the right to modify or amend the foregoing class definitions before the Court determines whether certification is appropriate.

>    **ANSWER:**    **Paragraph 459 of the Complaint contains no allegations directed to Zeroed-In and, therefore, no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 459 of the Complaint.**

460.    **Numerosity:** The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. As noted above, it has been reported that approximately 1.977 million individuals' information was compromised and exposed in the Data Breach.

>    **ANSWER:**    **Paragraph 460 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 460 of the Complaint.**

461. **Commonality and Predominance:** Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

>    a.    Whether Defendants engaged in the conduct alleged herein;

b.    Whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiffs' and Class Members' PII from unauthorized access and disclosure;

c.    Whether Defendants' computer systems and data security practices used to protect Plaintiffs' and Class Members' PII violated the FTC Act and/or state laws, and/or Defendants' other duties discussed herein;

d.    Whether Defendant Zeroed-In failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and Class Members;

e.    Whether Defendants unlawfully shared, lost, or disclosed Plaintiffs' and Class Members' PII;

f.    Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.    Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h.    Whether Plaintiffs and Class Members suffered injury as a proximate result of Defendants' negligent actions or failures to act;

i.    Whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiffs' and Class Members' PII;

j.    Whether Defendants breached duties to protect Plaintiffs' and Class Members' PII;

k.    Whether Defendants' actions and inactions alleged herein were negligent;

l.      Whether Defendants were unjustly enriched by their conduct as alleged herein;

m.      Whether an implied contract existed between Class Members and Defendants with respect to protecting PII and privacy, and whether that contract was breached;

n.      Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages or other relief, and the measure of such damages and relief;

o.      Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

p.      Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

**ANSWER:      Paragraph 461 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In denies each and every allegation in paragraph 461 of the Complaint, including subparagraphs (a) through (p) inclusive.**

462. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs on behalf of themselves and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

**ANSWER:      Denied.**

463. **Typicality:** Plaintiffs' claims are typical of the claims of the class. Plaintiffs, like all proposed members of the class, had their PII compromised in the Data Breach. Plaintiffs and

Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiffs' claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

>    **ANSWER:**    **Paragraph 463 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 463 of the Complaint.**

464.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class(es). Plaintiffs are adequate representatives of the Class(es) and have no interests adverse to, or in conflict with, the Class(es) they seek to represent. Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

>    **ANSWER:**    **Paragraph 464 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 464 of the Complaint.**

465.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiffs and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

> **ANSWER:**   **Paragraph 465 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 465 of the Complaint.**

466.   **Injunctive and Declaratory Relief:** Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

> **ANSWER:**   **Denied.**

467.   All members of the proposed Class(es) are readily ascertainable. Defendants have access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Breach. Indeed, impacted Class Members already have been preliminarily identified and sent a breach notice letter.

> **ANSWER:**   **Paragraph 467 of the Complaint states conclusions of law to which no answer is required. To the extent an answer is required, Zeroed-In denies the allegations in paragraph 467 of the Complaint.**

**COUNT I**
**NEGLIGENCE AND NEGLIGENCE *PER SE***
**(On Behalf of Plaintiffs and the Classes, as Against Zeroed-In)**

468.   Plaintiffs restate and reallege paragraphs 1 through 467 above as if fully set forth herein.

> **ANSWER:**   **Zeroed-In restates and realleges its answers to paragraphs 1 through 467 of the Complaint as its answer to paragraph 468 of the Complaint as if fully set forth herein.**

469.    Zeroed-In's clients, including Dollar Tree, require their employees to submit non-public PII as a condition of employment.

**ANSWER:**    **Denied.**

470.    Defendant Zeroed-In gathered and stored the PII of Plaintiffs and Class Members as part of its business, which affects commerce.

**ANSWER:**    **Denied.**

471.    Plaintiffs and Class Members entrusted Defendant Zeroed-In with their PII with the understanding that the information would be safeguarded.

**ANSWER:**    **Denied.**

472.    Defendant Zeroed-In had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if their PII were wrongfully disclosed.

**ANSWER:**    **Denied.**

473.    By assuming the responsibility to collect and store this data, Zeroed-In had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

**ANSWER:**    **Zeroed-In denies that the allegations in paragraph 473 of the Complaint fully and accurately describe any duty owed by Zeroed-In to Plaintiffs and other putative members of the alleged Classes and therefore said allegations are denied.**

474.    Zeroed-In had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

> **ANSWER:    Zeroed-In denies that the allegations in paragraph 474 of the Complaint fully and accurately describe any duty owed by Zeroed-In to Plaintiffs and other putative members of the alleged Classes and therefore said allegations are denied.**

475.    Zeroed-In owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

> **ANSWER:    Zeroed-In denies that the allegations in paragraph 475 of the Complaint fully and accurately describe any duty owed by Zeroed-In to Plaintiffs and other putative members of the alleged Classes and therefore said allegations are denied.**

476.    Zeroed-In's duty to use reasonable security measures arose as a result of the special relationship that existed between Zeroed-In, on the one hand, and Plaintiffs and Class Members, on the other hand. That special relationship arose because Dollar Tree was entrusted with Plaintiffs' and Class Members' confidential PII, as a necessary part of employment, and Dollar Tree (and possibly other employers) shared the information with Zeroed-In.

> **ANSWER:    Denied.**

477.    Zeroed-In also had a duty to exercise appropriate clearinghouse practices to remove Plaintiffs' and Class Members' PII it was no longer required to retain pursuant to the law and regulations.

**ANSWER:** **Zeroed-In denies that the allegations in paragraph 477 of the Complaint fully and accurately describe any duty owed by Zeroed-In to Plaintiffs and other putative members of the alleged Classes and therefore said allegations are denied.**

478.    Moreover, Zeroed-In had a duty to promptly and adequately notify Plaintiffs and Class Members of the Data Breach, but failed to do so.

**ANSWER:    Denied.**

479.    Zeroed-In had and continues to have duties to adequately disclose that Plaintiffs' and Class Members' PII within Zeroed-In's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by unauthorized third parties.

**ANSWER:    Denied.**

480.    Zeroed-In breached its duties, pursuant to the FTC Act and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII. The specific negligent acts and omissions committed by Zeroed-In include, but are not limited to, the following:

i.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

j.    Failing to adequately monitor the security of its networks and systems;

k.    Allowing unauthorized access to Class Members' PII;

l.    Failing to detect in a timely manner that Class Members' PII had been compromised;

m.     Failing to remove former employees' PII they were no longer required to retain pursuant to regulations; and

n.     Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that Class Members could take appropriate steps to mitigate the potential for identity theft and other damages.

**ANSWER:**    **Zeroed-In denies each and every allegation in paragraph 480 of the Complaint, including subparagraphs (i) through (n) inclusive.**

481.    Zeroed-In violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Zeroed-In's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the damages that would result to Plaintiffs and Class Members.

**ANSWER:**    **Denied.**

482.    Plaintiffs and Class Members were within the class of persons the provisions of the FTC Act were intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statutes were intended to guard against.

**ANSWER:**    **Denied.**

483.    Zeroed-In's violation of Section 5 of the FTC Act constitutes negligence *per se*.

**ANSWER:**    **Denied.**

484.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

**ANSWER:    Denied.**

485.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of Zeroed-In's inadequate security practices.

**ANSWER:    Denied.**

486.    It was foreseeable that Zeroed-In's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of corporate cyberattacks and data breaches.

**ANSWER:    Denied.**

487.    Zeroed-In had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed.

**ANSWER:    Denied.**

488.    Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Zeroed-In knew or should have known of the inherent risks in collecting and storing PII, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on its systems.

**ANSWER:    Denied.**

489.    It was foreseeable that Zeroed-In's failure to adequately safeguard PII would result in one or more types of injuries to Plaintiffs and Class Members.

**ANSWER:    Denied.**

490.    Plaintiffs and Class Members had no ability to protect their PII that was in, and possibly remains in, Zeroed-In's possession.

**ANSWER:    Denied.**

491.    Zeroed-In was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

**ANSWER:    Denied.**

492.    Zeroed-In's duties extended to protecting Plaintiffs and Class Members from the risk of foreseeable criminal conduct of third parties, which have been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

**ANSWER:    Zeroed-In denies that the allegations in paragraph 492 of the Complaint fully and accurately describe any duty owed by Zeroed-In to Plaintiffs and other putative members of the alleged Classes and therefore said allegations are denied.**

493.    Zeroed-In has admitted that the PII of Plaintiffs and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

**ANSWER:**    **Denied.**

494.    But for Zeroed-In's wrongful and negligent breaches of duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' PII would not have been compromised.

**ANSWER:**    **Denied.**

495.    There is a close causal connection between Zeroed-In's failure to implement security measures to protect Plaintiffs' and Class Members' PII, and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. PII was lost and accessed as the proximate result of Zeroed-In's failure to exercise reasonable care by adopting, implementing, and maintaining appropriate security measures.

**ANSWER:**    **Denied.**

496.    As a direct and proximate result of Zeroed-In's negligence, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised PII; (ii) invasion of privacy; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Zeroed-In's possession and is subject to further unauthorized disclosures so long as Zeroed-In fails to undertake appropriate and adequate measures to protect the PII.

**ANSWER:**    **Denied.**

497.    As a direct and proximate result of Zeroed-In's negligence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**ANSWER:    Denied.**

498.    Additionally, as a direct and proximate result of Zeroed-In's negligence, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remains in Zeroed-In's possession and is subject to further unauthorized disclosures so long as Zeroed-In fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

**ANSWER:    Denied.**

499.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

**ANSWER:    Denied.**

500.    Zeroed-In's negligent conduct is ongoing, in that it still possesses Plaintiffs' and Class Members' PII in an unsafe and insecure manner.

**ANSWER:    Denied.**

501.    Plaintiffs and Class Members are entitled to injunctive relief requiring Zeroed-In to: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual

audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**ANSWER:** **Denied.**

### COUNT II
### NEGLIGENCE AND NEGLIGENCE *PER SE*
### (On Behalf of Plaintiffs and the Classes, as Against Dollar Tree)

Zeroed-In makes no answer to the allegations set forth in Count II of the Complaint because said allegations are not directed to Zeroed-In. To the extent an answer is required, each and every allegation in Count II of the Complaint is hereby denied.

### COUNT III
### BREACH OF IMPLIED CONTRACT AND
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiffs and the Classes, as Against Dollar Tree)

Zeroed-In makes no answer to the allegations set forth in Count III of the Complaint because said allegations are not directed to Zeroed-In. To the extent an answer is required, each and every allegation in Count III of the Complaint is hereby denied.

### COUNT IV
### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
### (On Behalf of Plaintiffs and the Classes, as Against Zeroed-In)

550. Plaintiffs restate and reallege paragraphs 1 through 467 above as if fully set forth herein.

**ANSWER:** **Zeroed-In restates and realleges each of its answers to the preceding paragraphs of the Complaint as its answer to paragraph 550 of the Complaint as if fully set forth herein.**

551. Upon information and belief, Zeroed-In entered into contracts to provide services to its clients, which services included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be provided to it.

**ANSWER:** **Zeroed-In admits that it entered into contracts to provide services with clients but denies that the allegations in paragraph 551 of the Complaint fully and accurately describe the terms of said contracts and, therefore, said allegations are denied.**

552.    Upon information and belief, these contracts are virtually identical and were made expressly for the benefit of Plaintiffs and Class Members, as it was their Private Information that Zeroed-In agreed to receive and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and Class Members was the direct and primary objective of the contracting parties.

**ANSWER:**    **Denied.**

553.    Zeroed-In knew that if it were to breach these contracts with its clients, the clients' members, including Plaintiffs and Class Members, would be harmed.

**ANSWER:**    **Denied.**

554.    Zeroed-In breached its contracts with its clients—whose employees, including Plaintiffs and Class Members—were affected by this Data Breach when it failed to use reasonable data security measures that could have prevented the Data Breach, and when it failed to timely notify Plaintiffs and Class Members regarding the breach.

**ANSWER:**    **Denied.**

555.    As foreseen, Plaintiffs and Class Members were harmed by Zeroed-In's failure to use reasonable data security measures to store the Private Information Plaintiffs and Class Members provided to their employer which in turn provided that information to Zeroed-In and the

failure to timely notify Plaintiffs and Class Members, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information.

**ANSWER:    Denied.**

556.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

**ANSWER:    Denied.**

557.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Zeroed-In to: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**ANSWER:    Denied.**

## COUNT V
### BREACH OF CONFIDENCE
**(On Behalf of Plaintiffs and the Classes, as Against Dollar Tree)**

Zeroed-In makes no answer to the allegations set forth in Count V of the Complaint because said allegations are not directed to Zeroed-In. To the extent an answer is required, each and every allegation in Count V of the Complaint is hereby denied.

## COUNT VI
### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and the Classes, as Against Zeroed-In)**

569.    Plaintiffs restate and reallege paragraphs 1 through 467 above as if fully set forth herein.

**ANSWER:    Zeroed-In restates and realleges each of its answers to the preceding paragraphs of the Complaint as its answer to paragraph 569 of the Complaint as if fully set forth herein.**

570.    Plaintiffs and Class Members conferred a monetary benefit on Zeroed-In by providing it, through Zeroed-In's clients, including Dollar Tree, with their valuable PII.

**ANSWER:    Denied.**

571.    Zeroed-In knew that Plaintiffs and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the PII entrusted to it. Zeroed-In profited from Plaintiffs' retained data and used Plaintiffs' and Class Members' PII for business purposes.

**ANSWER:    Denied.**

572.    Zeroed-In failed to secure Plaintiffs' and Class Members' PII and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their PII provided.

**ANSWER:    Denied.**

573.    Zeroed-In acquired the PII through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

**ANSWER:    Denied.**

574.    If Plaintiffs and Class Members had known Zeroed-In would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their PII, they would not have agreed to the entrustment of their PII to Zeroed-In through its clients, including Dollar Tree.

**ANSWER:**    **Denied.**

575.    Under the circumstances, it would be unjust for Zeroed-In to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon it.

**ANSWER:**    **Denied.**

576.    As a direct an proximate result of Zeroed-In's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised PII; (ii) invasion of privacy; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Zeroed-In's possession and is subject to further unauthorized disclosures so long as Zeroed-In fails to undertake appropriate and adequate measures to protect the PII.

**ANSWER:**    **Denied.**

577.    Plaintiffs and Class Members are entitled to restitution and/or damages from Zeroed-In and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Zeroed-In from its wrongful conduct, as well as return of their sensitive PII and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

**ANSWER:**    **Denied.**

578.    Plaintiffs and Class Members may not have an adequate remedy at law against Zeroed-In, and accordingly, Plaintiffs and Class Members plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**ANSWER:**    **Denied.**

**COUNT VII**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Classes, as Against Dollar Tree)**

Zeroed-In makes no answer to the allegations set forth in Count VII of the Complaint because said allegations are not directed to Zeroed-In. To the extent an answer is required, each and every allegation in Count VII of the Complaint is hereby denied.

**COUNT VIII**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiffs and the Classes, as Against Zeroed-In)**

Pursuant to the Court's March 26, 2025 Memorandum Opinion (ECF No. 126), Count VIII of the Complaint is dismissed. Therefore, Zeroed-In makes no answer to the allegations in Count VIII of the Complaint.  To the extent an answer is required, each and every allegation in Count VIII of the Complaint is hereby denied.

**COUNT IX**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiffs and the Classes, as Against Dollar Tree)**

Zeroed-In makes no answer to the allegations set forth in Count IX of the Complaint because said allegations are not directed to Zeroed-In. To the extent an answer is required, each and every allegation in Count IX of the Complaint is hereby denied.

**COUNT X**
**BAILMENT**

**(On Behalf of Plaintiffs and the Classes, as Against Dollar Tree)**

Zeroed-In makes no answer to the allegations set forth in Count X of the Complaint because said allegations are not directed to Zeroed-In. To the extent an answer is required, each and every allegation in Count X of the Complaint is hereby denied.

## COUNT XI
### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
Cal. Civ. Code §§ 1798.100, *et. seq*. ("CCPA")
**(On Behalf of Plaintiff Jack Meyers and the California Class, as Against Defendants)**

Pursuant to the Court's March 26, 2025 Memorandum Opinion (ECF No. 126), Count XI of the Complaint is dismissed. Therefore, Zeroed-In makes no answer to the allegations in Count XI of the Complaint.  To the extent an answer is required, each and every allegation in Count XI of the Complaint is hereby denied.

## COUNT XII
### DECLARATORY AND INJUNCTIVE RELIEF
**(On Behalf of Plaintiffs and the Classes, as Against Zeroed-In)**

Pursuant to the Court's March 26, 2025 Memorandum Opinion (ECF No. 126), Count XII of the Complaint is dismissed. Therefore, Zeroed-In makes no answer to the allegations in Count XII of the Complaint.  To the extent an answer is required, each and every allegation in Count XII of the Complaint is hereby denied.

## PRAYER FOR RELIEF

Zeroed-In denies that there is any legal or factual basis for any of the relief Plaintiffs seek, including the relief sought in Plaintiffs' Prayer for Relief. To the extent not expressly admitted above, Zeroed-In denies each and every allegation in the Complaint, denies that Plaintiffs are entitled to judgment, damages or any other relief, whether or not expressly requested.  Further,

Zeroed-In denies that Plaintiffs can satisfy the requirements for class certification,

WHEREFORE, Zeroed-In Technologies, LLC demands that judgment be entered in its favor and against Plaintiffs, together with attorneys' fees and costs, and any other relief this Honorable Court deems just and reasonable.

## JURY TRIAL DEMAND

Zeroed-In Technologies, LLC demands a trial by jury for all issues so triable as of right.

## AFFIRMATIVE DEFENSES

Subject to and without waiver of or prejudice to its answers, denials and other statements contained in its Answer, and without assuming the burden of proof where it is not imposed upon Defendant by applicable law, Zeroed-In asserts the following affirmative defenses to Plaintiffs' claims. Zeroed-In reserves the right to amend its Answer if additional defenses, counterclaims, or third-party claims become apparent through the course of this action.

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

Plaintiffs' Complaint and the allegations contained therein fail to state a claim on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

(Particularity)

Plaintiffs have failed to sufficiently plead with particularity the causes of action.

### THIRD AFFIRMATIVE DEFENSE

(Lack of Standing)

Plaintiffs lack standing to bring or maintain this action or obtain the relief sought.

### FOURTH AFFIRMATIVE DEFENSE

157

(Statute of Limitations)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, by the applicable statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

(Laches)

Plaintiffs' Complaint and each of its causes of action are barred by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

(Estoppel, Res Judicata, or Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, res judicata, and/or waiver.

## SEVENTH AFFIRMATIVE DEFENSE

(Preemption)

Plaintiffs' Complaint and each of its causes of action fail, in whole or in part, because it is preempted.

## EIGHTH AFFIRMATIVE DEFENSE

(No Damages)

The Complaint and each of the causes of action are barred, in whole or in part, because Plaintiffs have not suffered any damages or harm by reason of the conduct alleged.

## NINTH AFFIRMATIVE DEFENSE

(Damages Resulting From Unrelated, Pre-existing, or Subsequent Conditions)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because Plaintiffs' alleged damages, if any, are the results of unrelated, pre-existing, or subsequent conditions.

## TENTH AFFIRMATIVE DEFENSE

(Speculative Damages)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because Plaintiffs' alleged damages are speculative and therefore not recoverable.

## ELEVENTH AFFIRMATIVE DEFENSE

(Reasonable Cybersecurity Measures)

The Complaint and each of its causes of action are barred, in whole or in part, because at all times relevant, Zeroed-In implemented and maintained reasonable cybersecurity measures.

## TWELFTH AFFIRMATIVE DEFENSE

(No Proximate Causation)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because none of Zeroed-In's alleged conduct, acts, or omissions was a substantial or proximate cause of Plaintiffs' alleged injuries, if any.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Comparative Fault / Contributory Negligence)

At the time of the incident referred to in the Complaint, Plaintiffs were negligent, and such negligence caused or contributed to cause any injuries, damages, losses or expenses that Plaintiffs claim.  Any amount Plaintiffs claim as compensatory damages, if the claims for such amounts are not entirely barred, must be diminished proportionately by the fault of Plaintiffs and the fault of all others who caused or contributed to cause the harm.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

The Complaint and each of its causes of action are barred, in whole or in part, by Plaintiffs' failure to mitigate damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Third Party Acts)

The Complaint and each of the causes of action are barred, in whole or in part, because to the extent Plaintiffs or the putative class members sustained injuries, damages or losses or incurred expenses as alleged, any such injuries, damages, losses or expenses were caused in whole or in part by the acts or omissions of one or more persons or entities for whose conduct Zeroed-In is not responsible and with whom Zeroed-In has no legal relation.

## SIXTEENTH AFFIRMATIVE DEFENSE

(Intervening Acts of Third Parties)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because any actual damages or risk of future harm to Plaintiffs proximately resulted from the intervening acts of unknown cyber criminals who engineered and executed the ransom event.

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Contribution/Apportionment of Liability)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because the alleged damages suffered by Plaintiffs, if any, were the direct and proximate result of the acts, omissions, or negligence of parties or persons other than Zeroed-In, and that the liability of Zeroed-In, if any, is limited in direct proportion to the percentage of fault actually attributable to Zeroed-In, who is entitled to have any liability abated, reduced, or eliminated to the extent other parties' fault caused or contributed to Plaintiffs' alleged damages, if any.

## EIGHTEENTH AFFIRMATIVE DEFENSE

(Offset)

Should Zeroed-In be held liable to Plaintiffs, which liability is specifically denied, Zeroed-In would be entitled to a set off for the total of all amounts paid to Plaintiffs from all collateral sources. And to the extent that the claims stated in the Complaint have been settled, compromised, or otherwise discharged, a set off is due.

## NINETEENTH AFFIRMATIVE DEFENSE

(Preventative Action)

Plaintiffs' Complaint and each of its causes of action fail, in whole or in part, because Zeroed-In took reasonable and appropriate action to prevent a future similar event.

## TWENTIETH AFFIRMATIVE DEFENSE

(No Duty)

Zeroed-In has no duty to exercise any care until it knows or has reason to know that the acts of the third person are occurring or about to occur.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

(Limitation of Liability)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, by any limitation-of-liability provisions contained in the parties' agreements to which Plaintiffs agreed.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

(Compliance with Obligations)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, by Zeroed-In's compliance with its obligation imposed under applicable state and federal statutes, if any.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

(Information Publicly Available)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because Plaintiffs' alleged information is publicly available through other sources.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

(Assumption of Risk)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because Plaintiffs assumed the risk their information could be viewed and/or accessed by unauthorized persons.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

(Alternative Dispute Resolution)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, to the extent Plaintiffs fail to exhaust any mandatory administrative and/or contractual remedies.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

(Adequate Remedy at Law)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, to the extent Plaintiffs seek equitable and/or injunctive relief because an adequate remedy at law exists.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

(Consent)

Plaintiffs are barred from any recovery because they consented to the acts or conduct of Zeroed-In of which they now complain.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

(Notice)

Plaintiffs' Complaint and each of its causes of action fail, in whole or in part, because Zeroed-In provided proper and timely notice under all state and federal statutes regarding any potential compromise of information.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

(Corrective Action)

Plaintiffs' Complaint and each of its causes of action fail, in whole or in part, because Zeroed-In took reasonable and appropriate corrective action following the ransom event.

## THIRTIETH AFFIRMATIVE DEFENSE

(Ratification)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because Plaintiffs directed, ordered, approved and/or ratified the conduct of Zeroed-In.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

(Justification and Privilege)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because the conduct set forth in the Complaint, if and to the extent it occurred, was justified or privileged and done in good faith, and no action may be taken against Zeroed-In on account of such conduct, if any.

## THIRTIETH-SECOND AFFIRMATIVE DEFENSE

(Necessity, Reasonableness, Good Faith)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because Zeroed-In's alleged conduct was, at all times, lawful, necessary, reasonable, in complete good faith, based upon good cause, and undertaken pursuant to the terms of applicable contract,

laws and regulations.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because any recovery awarded to Plaintiffs would constitute unjust enrichment.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Undue Hardship)

Plaintiffs' Complaint and each of its causes of action are barred, in whole or in part, because Plaintiff's proposed recovery and requested damages would create an undue hardship on Zeroed-In.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (No Liability for Acts Exceeding Scope of Authority)

To the extent Plaintiffs suffered or sustained any damages alleged in the Complaint and those damages were proximately caused and contributed to by any acts or omissions by purported agents of Zeroed-In, such purported agents were, at that time, acting outside the scope of their agency, and without any authority from Zeroed-In of any kind whatsoever. Zeroed-In is therefore not responsible for those acts or omissions, and any damages resulting therefrom.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Class Certification Inappropriate)

Plaintiffs' claims are not suitable for class treatment, and Plaintiffs have failed to allege facts sufficient to show otherwise.

## THIRTY- SEVENTH AFFIRMATIVE DEFENSE

### (No Adequate Class Representative)

The named Plaintiffs in this purported class action are not adequate class representatives and are not representatives of any class of putative Plaintiffs.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Damage Caused by Unforeseen Act of Nature)

Plaintiffs' claims are barred because Plaintiffs' damages, if any, are the result of an unforeseen act of nature for which Zeroed-In has no liability.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

(Open and Obvious)

Any risk of harm, if there was any such risk, was open and obvious and/or a matter of common knowledge and was voluntarily encountered by Plaintiffs.

### FORTIETH AFFIRMATIVE DEFENSE

(Unclean Hands)

Plaintiffs' Complaint and each of its causes of action are barred by the doctrine of unclean hands.

### FORTY-FIRST AFFIRMATIVE DEFENSE

(Attorneys' Fees Not Recoverable under the Applicable Law)

Plaintiffs are barred from recovering attorneys' fees under the applicable laws.

### FORTY-SECOND AFFIRMATIVE DEFENSE

(Unconstitutionality of Punitive Damages Claim)

Plaintiffs' punitive damages claim is barred as it violates Zeroed-In's rights to procedural and substantive due process under the Fifth and Fourteenth Amendment of the United States Constitution and the Nevada Constitution. The claim also violates Zeroed-In's rights to protection from excessive fines as provided in the Eighth Amendment to the United States Constitution and the Maryland Constitution.

### FORTY-THIRD AFFIRMATIVE DEFENSE

(Illegality of Punitive Damages Claim)

Zeroed-In specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decision of *BMW of North America v. Gore*, 116 U.S. 1589 (1996) and other relevant/interpretive cases.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

(Denial)

Zeroed-In denies each and every allegation of the Complaint not specifically admitted, denied, or otherwise pleaded to herein.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

(Incorporate Affirmative Defenses)

Zeroed-In hereby adopts and incorporate by reference any affirmative defenses that may be asserted by any co-defendants in this lawsuit.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

(Reservation of Rights)

Zeroed-In may have additional defenses that cannot be articulated at this stage due to Plaintiffs' failures to particularize their claims and provide more specific information concerning the nature of the alleged damage and claims for costs. Zeroed-In therefore reserves the right to assert additional defenses upon further particularization of Plaintiffs' claims, upon examination of documents, upon discovery of further information concerning Plaintiffs' alleged damages and claims for costs, and upon the development of the case.

WHEREFORE, Zeroed-In prays that judgment be entered as follows:

1. That Plaintiffs take nothing by way of the Complaint and that this action be dismissed in its entirety and with prejudice;

2. That judgment be entered in favor of Zeroed-In;

3. For recovery of costs of suit incurred by Zeroed-In in defending this action;

4. For recovery of attorneys' fees incurred by Zeroed-In in defending this action; and

5. For such other relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

Zeroed-In expressly reserves the right to seek leave of Court to amend its Answer or assert any additional Affirmative Defenses as may be appropriate based upon the facts and issues disclosed during the course of additional investigation and discovery as permitted by this Court.

Dated: April 9, 2025

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**


By: /s/ *Meagan P. VanderWeele*

Meagan VanderWeele (*pro hac vice*)
Gordon & Rees Scully Mansukhani, LLP
One North Wacker, Suite 1600
Chicago, IL 60606
Telephone: (312) 619-4931
Facsimile: (312) 565-6511
mvanderweele@grsm.com


Kelly M. Lippincott (Bar No. 15931)
Gordon Rees Scully Mansukhani, LLP
227 S. Washington Street, Suite 550
Alexandria, VA 22314
Telephone: (202) 399-1009
klippincott@grsm.com

*Attorneys for Defendant Zeroed-In Technologies, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2025, I electronically filed the foregoing with the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel for all parties of record.

By: /s/ *Meagan P. VanderWeele*

Meagan P. VanderWeele (*pro hac vice*)